BARNES, J.,
for the Court:
¶ 1. This appeal concerns a lawsuit where Michael and Betty Strait sued insurance agent Jackie McPhail and American Heritage Life Insurance Company (American Heritage). The Straits alleged that McPhail negligently failed to effectuate the instructions of the insured, Joseph Bagley, to change the beneficiary of a cancer/dread-disease insurance policy from Bagley’s estate to the Straits.
¶ 2. The Straits, a married couple, were close friends of Bagley and cared for him during his final illness. Bagley died of cancer in Jackson, Mississippi, on August 22, 2008. Days earlier, McPhail met with Bagley to have the benefits of his cancer policy paid to the Straits.[1] McPhail attempted to follow Bagley’s wishes by having Bagley sign a “change of beneficiary” form. But while Bagley signed the form, McPhail never completed the form or gave it to the insurer. Therefore, the cancer-policy benefits were paid to Bagley’s estate. In their complaint, the Straits claimed they sustained damages equivalent to the proceeds payable under the policy, or $44,973.50.
¶ 3. McPhail filed a motion to dismiss, which the Circuit Court of Hinds County granted, finding that the Chancery Court of Hinds County had determined that the proper beneficiary of the insurance policy was Bagley’s estate. Based on that finding, the circuit court found the Straits’ claim against McPhail and American Heritage had already been adjudicated. The circuit court also granted American Heritage’s motion for summary judgment. The Straits timely appealed, raising three issues: (1) whether the circuit court erred in applying res judicata and/or collateral estoppel in granting McPhail’s motion to dismiss; (2) whether the circuit court erred in granting American Heritage’s motion for summary judgment; and (3) whether American Heritage is liable for the negligent acts of McPhail. We find the circuit court erred in applying res judi-cata and collateral estoppel to dismiss the Straits’ claims, and in granting summary judgment to American Heritage. Accordingly, we reverse and remand the circuit court’s judgments, allowing the action to proceed in the circuit court.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
1Í 4. In July 1987, Bagley purchased a cancer and dread-disease policy that provided repayment of medical services rendered for cancer treatment. McPhail, an independent insurance broker and close friend of Bagley, sold the policy to Bagley while acting as a licensed agent for American Heritage. Bagley designated his estate as the beneficiary of the policy proceeds.[2]
*701 ¶ 5. McPhail had served as Bagley’s insurance agent for many years. Although McPhail ceased to be an authorized agent for American Heritage policies sometime before 2008,[3] she often assisted Bagley ■with various insurance forms because he “was not a paperwork person.”[4] McPhail testified that, even though no longer an agent of American Heritage, she still had the ability to “service” every policy that she ever sold. This ability included sending documents to American Heritage and expecting American Heritage to act upon them.
¶ 6. In June 2008, Bagley was diagnosed with head, neck, and throat cancer. Two weeks before his death, Bagley asked McPhail to help him complete a claim form for the policy. McPhail testified she agreed to “help him with his service work.” The claim form allowed the insured to assign policy benefits to a third party. Bagley told McPhail to mark “not applicable” in the section of the form entitled “assignment of benefits” because, as McPhail testified, she thought this would assign the benefits to a physician or a hospital. She later added that, at that time, Bagley did not want the benefits going to any physician, hospital, or “anyone else.”
¶ 7. McPhail testified that Betty had contacted her[5] and said Bagley realized he had not signed a change-of-beneficiary form for the cancer policy, and he wanted to change the beneficiaries to the Straits. On August 19, 2008, Bagley entered the hospital due to his worsening condition from cancer. On August 21, McPhail traveled to the hospital because of Bagley’s request to change the beneficiary on the cancer policy from his estate to the Straits. She brought with her a generic change-of-beneficiary form she had received from American Heritage.[6] In his hospital room, Bagley again orally affirmed that he wanted the policy proceeds to go to the Straits. He signed the form, which was witnessed by McPhail, a nurse, and Bagley’s treating physician, Dr. Keith Robbins. The Straits were not present during the execution of the form. McPhail took the executed form and went into another room with the Straits to obtain their correct legal names to put on the form. Betty testified that McPhail was unsure how to fill out the paperwork and wanted everything listed properly; so she was going to put their proper legal names on the form later. At the time, McPhail stated she was not aware that the policy did not allow for “a change of beneficiary.” Additionally, *702 McPhail testified that the Straits did not know she was no longer an agent for American Heritage.[7]
¶ 8. Dr. Robbins, also friends with Bag-ley, spoke with his attorney immediately after witnessing the execution of the form. He told Betty that the form was improper because the Straits’ names were not on the form when Bagley signed it. Betty relayed this information to McPhail, who tried to contact American Heritage’s legal department for advice on whether she could still use the form. She twice left voice-mail messages in the legal department; however, at the time, the home offices of American Heritage were closed due to Hurricane Fay. McPhail never received a return phone call. Bagley passed away the next day, and it is undisputed that the change-of-beneficiary form was never completed. McPhail then assisted the estate in obtaining the information to file a claim on the policy. McPhail testified she eventually either shredded or threw away the executed form after Bag-ley’s estate was settled.
¶ 9. The executor of Bagley’s will, William Kinstley, opened the estate and probated the will in the Hinds County Chancery Court. The Straits were both beneficiaries in the will — Michael was left a diamond ring, and Betty and Michael were both left other personal property at Bagley’s residence from which they could choose. Michael and Kinstley negotiated a trade of the ring for a vehicle, as Kinstley, according to Betty, “really wanted the ring.”
¶ 10. In January 2009, Betty sent a letter to Clay Pedigo, Bagley’s estate lawyer, requesting information about the insurance policy and indicating that the proceeds were being paid to the estate. She did not, however, make any claim to the proceeds, but simply wanted to make sure she would not be responsible for any “final expenses to come out of that policy.” In February 2009, American Heritage issued a check to Bagley’s estate for $44,973.50 in policy benefits. In March 2009, a petition for approval of the estate’s final accounting was entered. It listed among the assets the personal property swapped by the Straits and the policy proceeds. Also, the petitioner, Kinstley, requested reimbursement from the estate for prepaid estate expenses of $13,624.17, and asked that the remainder of the estate be distributed to him as the residual beneficiary. The Straits did not join in the petition, and the record does not reflect whether service of process was made upon them at that time. The chancery court, in its order closing the estate, granted the executor’s requests and specifically listed proceeds of the policy as an asset of the estate. There is no indication that the chancellor was made aware of any issue concerning the insurance proceeds.
¶ 11. In July 2009, the Straits filed their complaint against McPhail and American Heritage in the Hinds County Circuit Court. Their claims included: breach of contract for the failure of American Heritage to pay the Straits the proceeds against Bagley’s desire, tortious breach of contract, negligence and gross negligence, breach of fiduciary duty, bad faith refusal to pay benefits and investigate the claim, misrepresentation and/or failure to procure the change in benefits, and promissory and/or equitable estoppel. In August 2010, McPhail filed a motion to dismiss or, alternatively, a motion for summary judgment, claiming that the Straits’ *703 claim was barred by collateral estoppel and res judicata, among other theories. In November 2010, American Heritage filed a motion for summary judgment, arguing it was not vicariously liable because it made proper payment to Bagley’s estate, because the policy did not allow for a change of beneficiary, and because McPhail was not an American Heritage agent at the time of the incident, and she had no express or apparent authority to bind American Heritage. In its motion, American Heritage also adopted McPhail’s argument in her motion to dismiss. The circuit court granted McPhail’s motion to dismiss, because the issue of the proper recipient of the cancer-policy benefits had been previously “litigated and resolved” by the chancery court. The circuit court also granted American Heritage’s motion for summary judgment without articulating a specific rationale. The Straits timely appealed.
STANDARD OF REVIEW
¶ 12. When reviewing a circuit court’s grant or denial of a motion to dismiss, the appellate court applies a de novo standard of review. Scaggs v. GPCH-GP Inc., 931 So.2d 1274,1275 (¶ 6) (Miss.2006).
¶ 13. The appellate court reviews the grant of summary judgment de novo as well. Kilhullen v. Kan. City S. Ry., 8 So.3d 168, 174 (¶ 14) (Miss.2009). The evidence will be “viewed in the light most favorable to the party against whom the motion has been made.” Id. 174-75 (¶ 14) (quoting Daniels v. GNB Inc., 629 So.2d 595, 599 (Miss.1993)). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). The mov-ant bears the burden of proving that no genuine issue of material fact exists. Bucket v. Chaney, 47 So.3d 148, 153 (¶ 10) (Miss.2010).
ANALYSIS
I. Motion to Dismiss
¶ 14. The circuit court order granting McPhail’s motion to dismiss merely held that “the issue of the proper recipient of the benefits of the cancer policy was litigated and resol[ved]” in the chancery court. The Straits argue that the finding was improper, as there was no determination in the chancery court as to whether McPhail or American Heritage was liable to the Straits for damages in failing to effectuate the change of the beneficiary under Bagley’s cancer policy. Additionally, the Straits argue that the chancery court’s entry of an order in Bagley’s estate proceedings disbursing the funds of the estate does not bar litigation of the Straits’ claims in the circuit court, under res judi-cata or collateral estoppel. We agree.
¶ 15. For either res judicata or collateral estoppel to apply, there must be identity of the parties. Channel v. Loyacono, 954 So.2d 415, 424 (¶ 31) (Miss.2007) (res judicata); Johnson v. Bagby, 252 Miss. 125, 133, 171 So.2d 327, 330 (1965) (collateral estoppel). “Res judicata reflects the refusal of the law to tolerate a multiplicity of litigation.” Hill v. Carroll Cnty., 17 So.3d 1081, 1084 (¶ 8) (Miss.2009) (quoting Little v. V. & G Welding Supply Inc., 704 So.2d 1336, 1337 (Miss.1997)). In Mississippi, the doctrine of res judicata will bar a claim if four identities are present: “(1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom a claim is made.” Channel, 954 So.2d at 424 (¶ 31) (quoting Harrison v. *704 Chandler-Sampson Ins. Inc., 891 So.2d 224, 232 (¶ 24) (Miss.2005)). “The absence of any one of these four identities % fatal to the defense of res judicata.’ ” Id.
¶ 16. The Mississippi Supreme Court has stated collateral estoppel is “an unusual exception to the general rule that all fact questions should be litigated fully in each case.” Marcum v. Miss. Valley Gas Co., 672 So.2d 730, 733 (Miss.1996) (quoting Miss. Emp’t Sec. Comm’n v. Philadelphia Mun. Separate School Dist., 437 So.2d 388, 397 (Miss.1983)). While the doctrine is permitted, it is “neither mandatory nor mechanically applied.” Id. (quoting Jordan v. McKenna, 573 So.2d 1371, 1375 (Miss.1990)). Although similar to res judicata,
under the doctrine of collateral estoppel, “[a]n appellant is precluded from relit-igating in the present suit specific questions actually litigated and determined by and essential to the judgment in the prior suit, even though a different cause of action is the subject of the present suit,” and “collateral estoppel, unlike the broader question of res judicata, applies only to questions actually litigated in a prior suit, and not to questions which might have been litigated.”
Channel, 954 So.2d at 425 (¶ 34) (quoting Mayor & Bd. of Aldermen v. Homebuilders Ass’n of Miss., 932 So.2d 44, 59 (¶ 64) (Miss.2006)). “[T]he parties to an action will be precluded from relitigating a specific issue, which was: (1) actually litigated in the former action; (2) determined by the former action; and (3) essential to the judgment in the former action.” In re Estate of Stutts v. Stutts, 529 So.2d 177, 179 (Miss.1988) (citing Dunaway v. W.H. Hopper & Assocs., 422 So.2d 749, 751 (Miss.1982)). The most basic requirement of collateral estoppel is that the parties in the original action are the same as in the subsequent action. Johnson, 252 Miss, at 133,171 So.2d at 330.
¶ 17. Here, there is no identity of the parties between this action and the chancery court proceedings. While “strict identity of the parties is not necessary,” a non-party can assert res judicata “so long as it is in ‘privity’ with a named defendant.” Hill, 17 So.3d at 1086 (¶ 17) (quoting Harrison, 891 So.2d at 236-37 (¶ 37)). Regarding the last identity of the quality or character of the person, this Court has stated if someone is appearing in a limited or representative capacity in one case and personally in another, that party’s “quality or character” is not the same in the two actions. In re Estate of Bell, 976 So.2d 965, 968 (¶ 8) (Miss.Ct.App.2008) (citing McCorkle v. Loumiss Timber Co., 760 So.2d 845, 856 (¶ 47) (Miss.Ct.App.2000)). Even though the Straits were named in Bagley’s will to receive specific personal items, there is nothing in the record to indicate they were actual parties to the estate proceedings. McPhail does not claim otherwise.
¶ 18. In her motion to dismiss, McPhail argued that there is identity of the parties through privity, because in estate proceedings, the “executor is a trustee for both the creditors and the heirs.” This contention misses the mark. In this case, the Straits are not suing in the circuit court as heirs of the estate but as individuals with an interest in conflict with that of the estate and the executor, Kinstley, who ultimately received the policy benefits. Michael testified that he only learned that McPhail had not completed the paperwork a day or two before he called American Heritage on March 11, 2009. He was transferred to an individual named Deanna, and informed her that there was a problem and requested her to stop payment on the check to the estate. She stated that the check had already been mailed and “we won’t do that.” *705 The Straits were not in “privity” with the executor of the estate for the purposes of res judicata or collateral estoppel.
¶ 19. Further, neither McPhail nor American Heritage was a party to the estate proceedings. Citing In re Armistead’s Estate, 4 F.Supp. 606, 608 (S.D.Miss.1933), for the proposition that “all persons who have any interest in the [probate] proceeding are deemed parties,” McPhail claims that she and American Heritage were parties to the chancery proceedings. McPhail’s argument is attenuated at best. Armistead’s Estate dealt with a will contest, and whether the proceeding could be removed to federal court, or should be remanded to chancery court.[8] Id. at 608. Armistead’s Estate does not stand for the proposition that any entity merely concerned with the estate proceedings is an actual party to those proceedings for purposes of res judicata. The statement of law cited by McPhail reads in full: “The proceeding to probate a will ‘partakes, in some degree, of the nature of a proceeding in rent, in which all persons in the world who have any interest are deemed parties, and are concluded as upon res judicata by the decision of the court having jurisdiction.’ ” Id. (quoting In re Broderick’s Will, 88 U.S. 503, 504, 21 Wall. 503, 22 L.Ed. 599 (1874)). Broderick’s Will had held that probate courts have ample power to give full and adequate relief to parties attempting to contest a will as forgery; accordingly, where the parties had not contested the will in the probate proceeding, they could not do so eight years later in a different court. Bro-derick’s Will, 88 U.S. at 509, 517-19. This result was based upon the proposition that the probate of the will was “of the nature of a proceeding in rem” and that to allow the contestants to challenge the will in a different court “would unsettle all proceeds in rem.” Id. at 518. Broderick would prevent the Straits from suing the estate in a different proceeding to recover the insurance proceeds (in rem), but we do not see how it precludes them from suing the insurance agent and company for negligent payment of the proceeds to the estate, an in personam action.
¶ 20. In this case, there is simply no identity of the parties; accordingly, res judicata and collateral estoppel are inapplicable defenses in the case before us. The circuit court’s grant of the motion to dismiss was therefore error.
II. Motion for Summary Judgment
¶ 21. The Straits argue that the circuit court also erred in granting summary judgment to American Heritage.[9] American Heritage made the following argu *706 ments in its motion: the policy does not allow for a change of beneficiary,[10] and American Heritage cannot be liable for McPhail’s alleged conduct. Regarding the latter argument, American Heritage specifies that McPhail was not an agent of American Heritage at the relevant time, McPhail had neither express nor apparent authority to change the beneficiary of the policy, and American Heritage did not act in bad faith in paying Bagley’s estate and owed no fiduciary duty to the Straits. Additionally, American Heritage states the Straits’ claims are barred by estoppel, and the Straits lack standing. We agree with the Straits that there are genuine issues of material fact related to these issues, and summary judgment is improper.

A. Direct Liability of American Heritage

¶ 22. The Straits argue that there is a genuine issue of material fact that American Heritage is independently and directly liable to them. Specifically, the Straits allege American Heritage was negligent in failing to train McPhail on how to complete the necessary forms properly to change the recipient of the policy proceeds. Additionally, it is undisputed that American Heritage’s legal department never returned McPhail’s telephone calls when she sought advice about changing the payee.
¶ 23. Alternatively, American Heritage claims dismissal was proper because it owed no direct duty to the Straits, as third parties or insureds, as a matter of law; so, it could not be negligent. Additionally, American Heritage argues it owed no duty to train McPhail, who was an independent insurance agent licensed in Mississippi. Further, it claims the policy language regarding the payee or assignment of benefits is clear; so there could be no actionable duty or breach. We disagree.
¶ 24. “To prove negligence, the plaintiff must show, by a preponderance of the evidence: duty, breach of duty, proximate cause, and damages. The duty owed by a defendant to a plaintiff depends upon their relation to one another.” Skelton v. Twin Cnty. Rural Elec. Ass’n, 611 So.2d 931, 936 (Miss.1992) (internal citations omitted).
¶ 25. The record shows a genuine issue of material fact about McPhail’s confusion over how to change the payee of the indemnity insurance policy, which could show American Heritage’s negligence in instructing and training her. See Gamble ex. rel. Gamble v. Dollar General Corp., 852 So.2d 5, 14 (¶¶ 29-32) (Miss.2003) (holding the existence of a breach of the duty to train employees properly was a fact question for the jury). For example, in her deposition, McPhail stated she did not know she could not change the beneficiary of the cancer policy, like one would for a life-insurance policy, but instead had to change the assignment of benefits.[11] This misunderstanding thwarted her efforts to carry out Bagley’s wishes. Nor did she know whether the form was valid if Bagley signed it before the form was complete, which precipitated McPhail’s unanswered calls to American Heritage’s legal department, and resulted in the form not being properly completed before Bagley’s *707 death. Accordingly, there are genuine issues of material fact regarding American Heritage’s direct liability.

B. Vicarious Liability of American Heritage

¶ 26. The Straits claim the record shows an agency relationship existed between McPhail and American Heritage, and American Heritage was bound by McPhail’s actions through her apparent authority. The Straits point to evidence in the record that shows McPhail initially took the application for the policy and countersigned the policy on behalf of the insurer, and then later submitted various documents to American Heritage that were acted upon.
¶ 27. American Heritage argues it cannot be vicariously liable for McPhail’s alleged misconduct because McPhail was no longer a registered American Heritage agent with either express or apparent authority to act on its behalf since August 2008; rather, McPhail was solely Bagle/s agent.
¶ 28. The burden of proving whether an agency relationship exists is on the party asserting it. McFarland v. Entergy Miss. Inc., 919 So.2d 894, 902 (¶ 25) (Miss.2005) (citing Highlands Ins. Co. v. McLaughlin, 387 So.2d 118, 120 (Miss.1980)). An express agency is created when the principal authorizes someone to act on its behalf. Id. Implied agency requires that the principal give the agent actual authorization to perform acts that reasonably lead third parties to believe that an agency relationship exists. Capital Assocs. v. Sally Southland Inc., 529 So.2d 640, 644 (Miss.1988).
¶ 29. Regarding apparent authority, the Mississippi Supreme Court has held that “insurers [can] be bound by the actions of their agents acting within the course and scope of apparent authority regardless of the policy’s actual terms.” United Am. Ins. v. Merrill, 978 So.2d 613, 629 (¶ 81) (Miss.2007) (quoting Am. Income Life Ins. v. Hollins, 830 So.2d 1230, 1237 (¶ 18) (Miss.2002) (overruled on other grounds)). Apparent authority of an agent only binds the principal when the plaintiff can show “acts or conduct of [the] principal indicating [the] agent’s authority, reasonable reliance upon those acts by [a] third person, and [a] detrimental change in position by [the] third person as result of that reliance.” McFarland, 919 So.2d at 902 (¶ 26) (quoting Eaton v. Porter, 645 So.2d 1323, 1325 (Miss.1994)). Whether the evidence is sufficient to meet the test for the apparent authority of agents is an issue for the fact-finder. Hollins, 830 So.2d at 1238 (¶ 24) (citing Baxter Porter & Sons Well Servicing Co. v. Venture Oil Corp., 488 So.2d 793, 796 (Miss.1986)). The existence of an implied agency is proved by “facts and circumstances of the particular case, including words and conduct of the parties.” 3 Am.Jur.2d Agency § 16 (2004). The focus is on “whether the agent reasonably believes, because of the principal’s conduct, that the principal desired the agent so to act.” Id. at § 72.
¶30. Generally, revocation of authority does not become effective between the principal and a third person dealing with the agent until the third person receives notice. 2A C.J.S. Agency § 107 (2010). “The termination of an agency relationship does not prevent the agent from having apparent authority to those who have no notice of the termination of the agent’s authority.” Id. Thus, “in the absence of notice of revocation, third persons subsequently dealing with the agent may hold the principal responsible for acts done by the agent within the apparent scope of his or her previous authority.” Id.
*708 ¶ 31. We cannot say that there is no genuine issue of material fact as to whether American Heritage would be vicariously liable to the Straits. There are numerous unresolved factual issues regarding the scope of McPhail’s actual or apparent authority with regard to American Heritage, and her ability to bind the company. McPhail’s deposition testimony evinces many of the factual issues about the extent of her authority. She began selling insurance policies in 1975, and began writing coverage for American Heritage prior to 1987. She quit selling American Heritage policies “a few years” before Bagley died because the coverage became too expensive, and “most of the people dropped the coverage.” During her deposition, McPhail stated she was not an active American Heritage agent in January 2008, when Bagley had to sign a document authorizing American Heritage to disclose his confidential personal and medical information to McPhail when she helped him with a matter. But, even if she had been an active agent, McPhail stated she “probably” would have had to fill out this form anyway. Thus, the execution of the form would not necessarily have notified Bagley that McPhail was no longer an American Heritage agent. Further, McPhail testified that even though she is not a registered agent, she can “still service” all policies she has ever written and “can do routine service work,” which includes such tasks as “[b]eneficiary changes, ownerships, bank drafts.” She has never been told by American Heritage to stop submitting or servicing forms for her policy holders.
¶ 32. Even though McPhail was no longer a registered agent of American Heritage when she met Bagley in the hospital to execute the form, McPhail had verbally ascertained that Bagley wanted the beneficiaries changed to the Straits and attempted to complete this task. After questions arose and she called American Heritage, the company never called her back, even after the untimely hurricane. Once McPhail received no response from the American Heritage legal department, she admits she assisted in filing the claim for Bagley’s estate rather than for the Straits. She never completed the form or submitted it for the Straits and later admitted to shredding it after the estate closed.
¶ 33. It is undisputed that the Straits were not informed of the revocation of McPhail’s agency relationship with the insurance company, either through actual or apparent authority, to act on behalf of American Heritage.[12] Moreover, there is a fact question about whether Bagley knew that McPhail was no longer an American Heritage agent, regardless of McPhail’s intent to help him with the change of payees. A genuine issue of material fact remains as to whether American Heritage could be held responsible for McPhail’s activities in “servicing” the Bagley policy. Accordingly, summary judgment at this point is improper.

C. Waiver/Estoppel

¶ 34. Additionally, American Heritage argues the Straits’ claims are barred by estoppel because they waived the right to assert them. Waiver is the voluntary surrender of a right. Titan Indem. Co. v. Hood, 895 So.2d 138, 150 (¶ 60) (Miss.2004). “To establish a waiver, there must be shown an act or omission ... *709 fairly evidencing an intention permanently to surrender the right alleged to have been waived.” Id. at 150-51 (¶ 60) (citing Ewing v. Adams, 573 So.2d 1364, 1369 (Miss.1990)). The elements of equitable estoppel are: “(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the change of position.” B.C. Rogers Poultry Inc. v. Wedgeworth, 911 So.2d 483, 492 (¶ 32) (Miss.2005) (citing Cothem v. Vickers, Inc., 759 So.2d 1241, 1249 (¶ 19) (Miss.2000)).
¶ 35. It is unclear from the record why the Straits did not choose to assert their right to the cancer-policy funds sooner following Bagley’s death, by following up with McPhail and/or notifying American Heritage of their claim. Michael testified that he only learned that McPhail had not completed the change of beneficiary a few days before March 11, 2009. He tried to stop payment on the check to the estate but was unsuccessful. This testimony is somewhat contradicted by other evidence, such as Betty’s letter to Pedigo, which indicated her knowledge that the policy proceeds would go to the estate. It is also unclear why McPhail did not continue to follow through with Bagley’s wishes after he passed away, either with American Heritage’s legal department or the estate. The extent to which American Heritage is bound by McPhail’s knowledge may well determine whether American Heritage can claim reliance on the inaction of the Straits. Further, whether American Heritage had the ability to stop payment on the check to the estate when Michael spoke with Deanna may also be an issue. American Heritage has not proved entitlement to equitable estoppel as a matter of law.

D. Standing and Statute of Frauds

¶ 36. On appeal, American Heritage no longer argues the Straits lack standing to assert a claim against them, as it did in its motion for summary judgment, but McPhail does argue lack of standing. She claims the Straits were not proper parties to this claim because they were not parties to the “contract” between Bagley and American Heritage, based on the chancery court’s ruling. “Parties have standing to sue or intervene when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law.” Dunn v. Miss. State Dep’t of Health, 708 So.2d 67, 70 (¶ 9) (Miss.1998) (quoting Fordice v. Bryan, 651 So.2d 998, 1003 (Miss.1995)) (quotation marks omitted).
¶ 37. We find this argument without merit, as the Straits were intended third-party beneficiaries of the policy, and not unrelated third parties with no interest in the litigation or adverse effect from the actions of the defendants.[13]
¶ 38. McPhail also argues that the statute of frauds bars the Straits’ claims. Mississippi Code Annotated sec *710 tion 15-3-1 (Rev.2012) provides that a contract to answer for the debt of another must be in writing. McPhail claims the cancer policy specifically states no agent can change the policy, but it must be done in writing and approved by an executive officer. McPhail claims she had no authority to modify the contract or change the beneficiary. Further, she states the Straits were not listed as beneficiaries under the policy, and the policy was never modified to allow for such.
¶ 39. This argument is without merit, however, because the statute of frauds only affects matters prior to executing a contract. Here, the issue is the change of beneficiaries after the original execution of the contract/policy. Accordingly, the statute of frauds is inapplicable.
CONCLUSION
¶ 40. The circuit court’s grant of both McPhail’s motion to dismiss and American Heritage’s motion for summary judgment was in error. Accordingly, we reverse and remand the two judgments for further proceedings consistent with this opinion.
¶ 41. THE JUDGMENTS OF THE CIRCUIT COURT OF HINDS COUNTY ARE REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEES.
IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. LEE, C.J., AND CARLTON, J., NOT PARTICIPATING.

. It is disputed whether Betty contacted McPhail, or whether McPhail sought out Bag-ley on her own because she "needed to finish up and do her job.”

. The insurance application had a “Beneficia *701 ry Designation” section, under which Bagley had designated "Estate” as the “Name of Beneficiary.” It is unclear, however, whether this section of the application actually referred to life insurance or cancer insurance, since the application was for both. Regardless, the general provisions of the cancer policy explained: "All indemnity payable under this policy will be paid to the insured. Any accrued indemnities unpaid at your death will be paid to your estate.” We note that the policy did allow for an assignment of benefits to a third party on its claim form.

. McPhail stopped writing American Heritage policies because they became too expensive.

. In January 2008, Bagley asked McPhail to help him with an unknown issue related to the cancer policy. Bagley was required to sign a document authorizing American Heritage to disclose his confidential personal and medical information to McPhail. McPhail testified, however, that he "probably” would have been required to execute the consent even if she had still been an authorized agent of American Heritage.

. As previously mentioned, Betty disputes this fact.

. McPhail had called American Heritage to request a change-of-beneficiary form. She had not specified the type of policy for which she was requesting the form.

. The record is unclear as to how much Bag-ley knew about McPhail's agency authority at the time.

. In Armistead’s Estate, the petitioner properly probated the will in chancery court, and on the same day, a petition contesting the validity of the will was filed. Annistead's Estate, 4 F.Supp. at 607. The probate petitioner moved to remove the will contest from chancery to federal court, and the contestant filed a motion to remand the proceeding to chancery court. Id. The district court determined that a "contest is a mere continuation of those [probate] proceedings,” and "all interested persons must be made ’parties; and on the trial the order of probate is only prima facie evidence of the validity of the will.” Id. at 608 (internal citations omitted). Accordingly, the district court ruled the motion to remand the action to chancery court should be granted. Id.

. Again, the circuit court did not elaborate on a rationale in granting American Heritage's motion. The Straits note that since the court did not specify precise grounds for summary judgment, they assumed it was granted based on the circuit court's finding that res judicata or collateral estoppel bars the Straits’ claims for damages. We agree with this assessment, but shall briefly discuss the other arguments raised by American Heritage in its motion, as the Straits did in their brief, and why summary judgment is improper.

. Regarding this argument, in its appellate brief American Heritage acknowledges that while the policy did not provide for a change of beneficiary, it did contain a procedure for changing the recipient of the policy benefits, which the “Assignment of Benefits” section of the claim for Bagley executed demonstrates.
Both Appellees fail to specifically discuss this argument in their appellate briefs in support of summary judgment, except in relation to their other arguments, such as standing.

. The policy itself is silent as to how to effectuate the change.

. In Betty's deposition, she stated McPhail came to Bagley's hospital room because “she needed to finish up and do her job”; Bagley had not called her to come there, nor had Betty prompted her to come. McPhail assured Betty changing the form would be no problem after Dr. Robbins raised his concerns. In Michael’s deposition, he testified McPhail assured him she would get the job done.

. The Straits cite Sun Life Assurance of Canada (U.S.) v. Barnard, 652 So.2d 681 (La.Ct.App.1995), which is instructive. Sun Life involved life insurance policy claims by an insured's wife and the insured’s friend. Id. at 682. The trial court concluded that the insured effectively changed his beneficiary from his wife and friend to another individual, and dismissed the friend’s lawsuit against the insurance agent, who prepared and improperly dated the change-of-beneficiary form. Id. at 683. The wife and friend appealed. The appellate court reversed and rendered the trial court's decision, holding that the insurance agent was liable to the friend, as the intended beneficiary, for damages in the amount she would have received under the policy. Id. at 685. The appellate court’s finding that the change-of-beneficiary form was invalid did not bar the intended beneficiary’s claims against the agent. Id.