# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-00075-SCT

*MICHAEL STRAIT AND BETTY STRAIT*

*v.*

*JACKIE McPHAIL AND AMERICAN HERITAGE LIFE INSURANCE COMPANY*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2011 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | MICHAEL T. JAQUES |
| | JASON E. DARE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL T. JAQUES |
| ATTORNEYS FOR APPELLEES: | MICHAEL JEFFREY WOLF |
| | J. STEPHEN KENNEDY |
| | GEORGE CLANTON GUNN, IV |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 08/21/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.	In 1987, Joseph Bagley purchased a cancer and dread-disease policy through his friend and insurance agent, Jackie McPhail. The policy was issued by American Heritage Life Insurance Company. McPhail worked as an independent insurance broker, and she was a registered agent with American Heritage at the time the policy was written. The policy

indicates that Bagley purchased coverage concerning cancer and dread disease, a home-recovery rider, and a hospital intensive-care rider. Bagley also had an option to purchase life insurance; however, McPhail testified that Bagley did not purchase life insurance under this policy because he had purchased a separate life-insurance policy.

¶2.    In 2008, Bagley was diagnosed with cancer. Bagley contacted McPhail to file a claim under the policy and to "change the beneficiary" of the policy from his estate to Michael and Betty Strait. McPhail testified that she had ceased writing policies for American Heritage; however, she still retained the authority to service Bagley's policy, and she acquired his written consent to receive information regarding his policy from the insurance company. While Bagley was in the hospital, McPhail met with him regarding changing the beneficiary of his cancer policy. McPhail presented an American Heritage change-of-beneficiary form, which Bagley ultimately signed. The signature was witnessed by Bagley's physician, a nurse, and McPhail. Bagley orally communicated that he wished for the beneficiary to be changed from his estate to the Straits. At the time that Bagley signed the form, the Straits had yet to be listed as beneficiaries on the form. McPhail met with the Straits after the form was signed to confirm their correct legal names to be placed on the change-of-beneficiary form at a later time. McPhail provided that she did not fully complete the form because she was attempting to contact American Heritage to confirm the correct procedure for completing the process; however, American Heritage's office was closed because of Hurricane Fay, and McPhail never succeeded in speaking with American Heritage regarding the matter. Bagley's physician, who witnessed Bagley signing the form, later communicated to Betty Strait that his attorney advised that the form could not be used because the Straits' names were not

2

listed on the form prior to Bagley's signature. Betty Strait relayed this to McPhail, who then attempted to contact American Heritage's legal department. McPhail called the company on multiple occasions and left voicemail messages, but she never received a return phone call. Soon thereafter, Bagley passed away, and the form was never completed.[1]

¶3.     The estate was probated in Hinds County Chancery Court. McPhail worked with the estate to file a claim on the cancer and dread-disease policy. The Straits were named beneficiaries in Bagley's will. The record contains written correspondence by Betty Strait explaining that they were aware that the proceeds of the policy were now passing to Bagley's estate, through no fault of their own, and that they were not responsible for any final expenses not covered by the policy. From the record, it is clear that the Straits did not contest the passage of the policy proceeds to the estate at the time that the estate was being settled.

¶4.     In 2009, proceeds totaling $44,973.50 were issued to Bagley's estate from the American Heritage policy. The executor of Bagley's will, William Kinstley, petitioned for the approval of the estate's final accounting, which included the policy proceeds. Kinstley submitted certain expenses to be paid from the estate, with the remainder being disbursed to him as the residual beneficiary. Ultimately, Kinstley's requests were granted in the order closing the estate.

¶5.     Later that year, the Straits initiated legal action against McPhail and American Heritage in Hinds County Circuit Court, arguing that Bagley intended for them to receive the proceeds from the cancer policy. The Straits alleged breach of contract, tortious breach of

---

[1] McPhail testified that after the estate was closed, she eventually shredded the change-of-beneficiary form.

contract, negligence and gross negligence, breach of fiduciary duties and the duty of good faith and fair dealing, bad-faith refusal to pay benefits and to promptly and adequately investigate the claim, misrepresentation and/or failure to procure, promissory and/or equitable estoppel, and they sought a claim for declaratory relief. McPhail filed a motion to dismiss, which was granted by the circuit court. The circuit court found that the issue had been previously litigated and resolved in chancery court, and that no appeal had been taken from the chancery court judgment. Likewise, the circuit court granted American Heritage's motion for summary judgment, finding that there were no genuine issues of material fact to be resolved.

¶6. The Straits appealed to this Court, and the case was assigned to the Court of Appeals. The Court of Appeals reversed the judgment and remanded the case, finding that genuine issues of material fact did exist[2] and that *res judicata* and collateral estoppel did not bar the Straits' claims. *Strait v. McPhail*, ___So. 3d___, No. 2012-CA-00075-COA (November 12, 2013). McPhail and American Heritage filed petitions for writ of *certiorari* with this Court, which were granted.

¶7. McPhail raises the following issues:

> I. The Court of Appeals erred when it found that, although the Straits would be prevented from suing the estate to recover the insurance proceeds, they might still pursue a negligence theory, which creates a duty where none existed before;

---

[2] Specifically, the Court of Appeals found that genuine issues of material fact existed regarding the following: (1) whether American Heritage is directly liable because of McPhail's confusion over the proper way to change a beneficiary, (2) whether American Heritage is vicariously liable for McPhail's activities in "servicing" the policy, and (3) whether American Heritage can claim waiver/estoppel by the Straits because of McPhail's knowledge of Bagley's wishes and her failure to follow through with those wishes.

4

II. The Court of Appeals' opinion defines the Straits as third-party beneficiaries, which creates new contractual rights for the Straits that did not exist under the primary contract; and

III. The Court of Appeals' decision improperly allows for the collateral attack in one court of the judgment of another court.

¶8. American Heritage raises the following issues:

I. The Court of Appeals' decision impos[ing] a new duty on insurers to train independent, state-licensed brokers is a fundamental issue of broad public importance that should be reviewed and reversed by this court; and

II. The Court of Appeals' opinion regarding vicarious liability is in conflict with this Court's precedent.

¶9. This Court finds that the Court of Appeals opinion was correct in its determination that *res judicata* and collateral estoppel did not bar the Straits' claims, because the Straits were not named parties to the estate proceedings. ***Strait v. McPhail***, ___So. 3d ___ No. 2012-CA-00075-COA (November 12, 2013). However, this Court finds that the policy did not allow for the beneficiary to be changed, therefore, the Straits fail to raise any claims from which relief may be granted, and no genuine issues of material fact exist. Accordingly, we will address the following issues under the same analysis:

I. Whether the Straits raise any claims from which relief may be granted regarding their entitlement to the policy proceeds, and

II. Whether any genuine issues of material fact exist to be resolved.

## STANDARD OF REVIEW

¶10. The grant or denial of a motion to dismiss and the grant of summary judgment both require this Court to apply a de novo standard of review. ***Scaggs v. GPCH-GP, Inc.***, 931 So.

5

2d 1274, 1275 (Miss. 2006); *Kilhullen v. Kan. City S. Ry.*, 8 So. 3d 168, 174 (Miss. 2009). The grant of summary judgment will be upheld "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "When considering a motion to dismiss, the allegations in the complaint must be taken as true and the motion should not be granted unless it appears beyond a doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Scaggs*, 931 So. 2d at 1275 (quoting *Lang v. Bay St. Louis/Waveland Sch. Dist.*, 764 So. 2d 1234 (Miss. 1999).

## ANALYSIS

I. **Whether the Straits raise claims from which relief may be granted regarding their entitlement to the policy proceeds, and**

II. **Whether any genuine issues of material fact exist to be resolved**.

¶11.    The Court of Appeals found that the Straits were intended third-party beneficiaries of the policy, therefore, they had standing to pursue legal action and  suffered from the actions of the defendants.  *Strait v. McPhail*, ___ So. 3d ___ No. 2012-CA-00075-COA (November 12, 2013). In her petition for writ of *certiorari*, McPhail argues that this holding is erroneous because the finding is based on *Sun Life Assurance of Canada (U.S.) v. Barnard*, which is distinguishable from the case before us. *Sun Life Assurance of Canada (U.S.) v. Barnard*, 652 So. 2d 681 (La. Ct. App. 1995). The Court of Appeal of Louisiana found that the insurance agent, Barnard, was negligent when he failed to properly execute the change-of-beneficiary form on a life-insurance policy. *Sun Life Assurance of Canada*, 652 So. 2d at

6

685. Barnard was held liable to Ms. Cole, the intended beneficiary, for the amount she would have received under the policy, had the change-of-beneficiary form been properly executed. *Id*.

¶12.     At first blush, this case appears to provide precise guidance; however, McPhail points out that the policy in question is a *reimbursement* policy rather than a life-insurance policy, as seen in **Sun Life Assurance of Canada**. **Id**. Bagley's policy plainly states that it is a "cancer and dread disease policy." The policy further provides, "[t]his is a specified disease policy which only provides benefits for loss due to cancer and dread disease. . . ."  It is undisputed that Bagley's policy is not a life-insurance policy like the policy in **Sun Life Assurance of Canada**. **Id**.

¶13.     Nonetheless, a deeper analysis of Bagley's cancer policy must be conducted. A third party could receive payments from this policy in two ways. The policy provides for the following:

> Assignment - - We are not bound by an assignment of this policy for a claim on this policy unless we have received the assignment in our Home Office prior to the payment of any benefits claimed. We assume no responsibility for the validity of the assignment.
>
> Payment of Claims – All indemnities payable under this policy will be paid to the Insured. Any accrued indemnities unpaid at your death will be paid to your estate. If any indemnity of this policy shall be payable to your estate, or if you are not competent to give valid release, we may pay such indemnity, up to an amount not exceeding $3,000, to any relative by blood or connection by marriage to you who is deemed by us to be equitably entitle[d] thereto. Any payment made by us in good faith pursuant to this provision shall fully discharge us to the extent of such payment.

The policy terms do not contain any provisions regarding naming beneficiaries or the change of beneficiaries. On Bagley's completed insurance form, he lists "Estate" under "Name of

7

Beneficiary." However, the section requesting the name of beneficiary is under section C of the form, which is titled "Life Insurance/Life Insurance Riders." As previously mentioned, the policy form offers the option to purchase life-insurance coverage. The form clearly shows that Bagley did not purchase life insurance in conjunction with his cancer policy. As previously mentioned, McPhail testified that Bagley had a separate life-insurance policy, which was acquired through a company other than American Heritage.

¶14.    Based on the policy terms quoted above, the policy does not provide the policyholder with an option to name a beneficiary. The terms plainly state that the policy pays the insured, which reimburses the policyholder for any expenses related to diagnosis of cancer or dread disease. An assignment would have allowed Bagley to assign any number of claims to cover the expenses directly owed to the third party, if the assignment was received by the company prior to any benefits payment to Bagley. Lastly, the policy allowed the insurance agency to disburse payments not to exceed $3,000 to any relative, through blood or marriage, who was equitably entitled to reimbursement, if Bagley was incompetent to authorize such release or if Bagley had passed away.

¶15.    It is evident that, even if McPhail had successfully completed the change-of-beneficiary form, the Straits never could have been named beneficiaries under the policy, because the policy did not entitle Bagley to name a beneficiary. Further, the Straits have never claimed any expenses owed to them because of Bagley's illness. From the language of the policy, it appears that the only possible way the Straits might have been eligible to receive payment, would have been if Bagley had assigned a claim to them for benefits owed

8

regarding any expenses the Straits had assumed on behalf of Bagley. As stated, no such expenditures by the Straits are claimed, nor are they evidenced in the record.[3]

¶16.    These facts further distinguish this case from *Sun Life Assurance of Canada*, because the life-insurance policy in that case did provide for a named beneficiary and for a way in which that beneficiary could be changed. *Sun Life Assurance of Canada* 652 So. 2d 681. Here, the Straits never could have been named a beneficiary to the cancer policy. The cancer policy remained only to reimburse the expenses accrued as a result of being diagnosed with the disease.

¶17.    Lastly, the record reflects that the Straits were actively involved in the probate of the will, as they were named beneficiaries under Bagley's will. The Straits negotiated some of the terms of the will, trading a ring for a vehicle. Moreover, it is evident from Betty's written correspondence that the Straits knew that the remainder of the policy proceeds would be passing to the estate, yet they never attempted to contest this during the probate of the estate.

**CONCLUSION**

¶18.    Because the Straits fail to raise any issues upon which relief may be granted, the circuit court's grant of McPhail's motion to dismiss was proper. However, the circuit court erred in granting the motion to dismiss based on *res judicata* and collateral estoppel. Additionally, the circuit court properly granted American Heritage's motion for summary

---

[3] The claim form that was signed by Bagley contained a section for assignment. "N/A" was present on the claim form that Bagley signed prior to his death. McPhail testified that she instructed Bagley that he could assign the claim to a doctor or hospital. McPhail testified that Bagley did not want to assign any claims, therefore, "N/A" was placed under that section. It is clear that assignment would only be for reimbursement related to Bagley's illness, and the Straits do not claim any entitlement to reimbursement.

judgment, as there are no issues left to be resolved in this case. The Straits were never eligible to be third-party beneficiaries under the policy, and they have failed to show any equitable entitlement to reimbursement. For the above reasons, we reverse the judgment of the Court of Appeals. Further, we reinstate and affirm the judgments of the Circuit Court of Hinds County.

¶19. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR.**