# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00412-SCT

*CLAYTON HINTON*

*v.*

*NATE ROLISON, INDIVIDUALLY; NATE*
*ROLISON d/b/a LINCOLN ROAD AUTOPLEX;*
*AND CREDIT ACCEPTANCE CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2014 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| TRIAL COURT ATTORNEYS: | BRADLEY M. GLAZE |
| | L. CLARK HICKS |
| | CARROLL H. INGRAM |
| | JOHN G. CORLEW |
| | STEPHEN T. MASLEY |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | R. LANE DOSSETT |
| | L. CLARK HICKS, JR. |
| ATTORNEYS FOR APPELLEES: | JOHN G. CORLEW |
| | CARROLL H. INGRAM |
| | JENNIFER INGRAM WILKINSON |
| | MARK H. TYSON |
| | STEPHEN T. MASLEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART, REVERSED IN PART, AND REMANDED - 10/08/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Clayton Hinton invested substantial resources into a used-car business, including purchasing the inventory on his line of credit. Now he claims that his business partner, Nate

Rolison, is keeping profits from that business that should be divided equally. Hinton sued Rolison, seeking what he claims is his rightful share of those profits. Hinton also sought an injunction against the financing company that was paying Rolison some of the disputed profits.

¶2. Both Rolison and the financing company filed motions to dismiss. The trial court granted Rolison's motion based on *res judicata* and granted the finance company's motion finding Hinton had failed to state a viable claim. Finding that *res judicata* did not bar Hinton's claims against Rolison, and that Hinton failed to state a viable claim for injunctive relief against the financing company, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

### This Suit in Lamar County Circuit Court

¶3. On February 19, 2013, Clayton Hinton filed a complaint in Lamar County Circuit Court against Nate Rolison—both individually and doing business as Lincoln Road Autoplex—and NWEC, Inc.[1] In the complaint, Hinton also sought an injunction to stop a certain financing company, called Credit Acceptance Corporation, from paying any more profits to Rolison.

¶4. Hinton claimed that he and Rolison had, in 2009, "entered into an Agreement titled 'Lease of Property Agreement.'" Hinton claimed that Rolison had breached a provision of the lease agreement that set out some terms of a business partnership. That provision provided the following:

---

[1]Unless otherwise noted, "Rolison" refers to Nate Rolison, Nate Rolison d/b/a Lincoln Road Autoplex, and NWEC, Inc., collectively.

2

Nate Rolison, DBA Lincoln Road Autoplex and Clayton Hinton, being equal partners, assuming responsibility for all debt, taxes, insurance and profits, not limited to Auto Sales, including all back end profits defined as "pools" at Lincoln Road Autoplex, assume equal personal responsibility for lease should Lincoln Road Autoplex not be able to pay the lease.

The real property covered by the lease agreement was in Hattiesburg, but the used-car business that Hinton and Rolison operated also had locations in Columbia and Laurel. Hinton claimed he had "made substantial investments of resources including, but not limited to[,] time, money/capital, expertise, and good will from the inception of the Agreement through 2012, in support of the business venture." Specifically, Hinton claimed that the business had used Hinton's line of credit to purchase its inventory. Hinton accused Rolison of improperly distributing profits generated from the sale of that inventory.

¶5. Hinton also claimed that he and Rolison had "engaged Credit Acceptance to provide financing to their customers." Under that arrangement, Credit Acceptance would pay Hinton and Rolison when their customers financed purchases through Credit Acceptance. Hinton claimed that Credit Acceptance was paying those funds to Rolison, who was not distributing to Hinton his share, and who was blocking Hinton's access to the records and information about the arrangement.

¶6. Hinton explained his request for an injunction against Credit Acceptance:

In order to preserve the status quo and prevent irreparable harm, Credit Acceptance should be enjoined by a temporary restraining order and a preliminary injunction from paying any further funds to Rolison Defendants generated from the . . . business between Hinton and Rolison. Credit Acceptance should be ordered to hold all such funds in trust, until final judgment is rendered. Failure to hold all such funds in trust will result in spending, using, wasting of the funds and prevent Hinton from being compensated upon any future judgment of the Court finding Rolison in breach.

3

¶7. Credit Acceptance moved to dismiss Hinton's injunction request, arguing that Mississippi Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the priority-jurisdiction rule mandated dismissal with prejudice. Credit Acceptance claimed that Hinton lacked standing to sue it because he was not a party to the contract whereby it was paying the pool checks to Rolison. It also argued that Hinton had "failed to state a claim for injunctive relief against Credit Acceptance upon which relief can be granted." Finally, it argued that, because a previously filed lawsuit between Hinton and Rolison existed in chancery court at that time, the priority-jurisdiction rule precluded the trial court from exercising jurisdiction over the matter.[2]

¶8. Rolison also moved to dismiss Hinton's claims, arguing that the priority-jurisdiction rule should preclude Hinton's maintenance of this suit, claiming that

> Clayton Hinton's Amended Complaint in the previously filed Chancery Court Action alleges that the defendants to that action, including Nate Rolison, breached a rental agreement covering property located at 4345 Lincoln Road Extension. In the present action, Clayton Hinton has alleged Nate Rolison has breached the same agreement, covering the same property.

### The Previously Filed Case in Chancery Court

¶9. In that previously filed chancery action, Hinton and two of his adult children, Nathan Hinton and Seneca Eubanks, had sued Rolison in Lamar County Chancery Court. They alleged that Rolison had forged Seneca Eubanks's and Nathan Hinton's names in order to fraudulently convey a parcel of land to himself and had stopped paying rent to Hinton on that property. Hinton and his children sued to quiet title and to recover the unpaid rent. Hinton

---

[2]Credit Acceptance was not a party to the lawsuit in chancery court.

previously had conveyed the property to his children by warranty deed, but had himself remained obligated on a note and deed of trust.

¶10. While the motions to dismiss were pending in circuit court, the parties reached a mediated settlement of the chancery-court suit. The Memorandum Settlement Agreement the parties signed stated that two other cases were being settled as well—one that was pending in Lamar County Chancery Court, and one that was pending in Lamar County Circuit Court. The parties listed the three settled cases by cause number and also expressly excluded this case from the scope of the settlement, specifying that "[t]he only remaining claims and causes of action among the parties are those contained in the Civil Action identified as *Clayton Hinton v. Nate Rolison, Individually; Nate Rolison d/b/a Lincoln Road Autoplex; and Credit Acceptance Corporation, Inc.*" There is no dispute that that language referred to this suit.

¶11. Later, the parties also signed a Mutual Release Agreement. In it, they agreed that the "disputes between the parties relate to that *real property* [at 4345 Lincoln Road Extension in Hattiesburg]."(Emphasis added.) They also agreed "to resolve, settle and terminate all of their disputes with respect to the ownership of the subject property and all of the claims and counterclaims which were asserted in the referenced litigation, or could have been therein asserted, which the Hinton parties and Rolison parties intend to be a complete accord and satisfaction by and between them."

¶12. By the Mutual Release Agreement, the parties specifically released one another from "any and all claims, causes of action or other liability whatsoever arising in any manner from

5

dealings . . . with respect to the *real property* situated in Lamar County, Mississippi . . . ." (Emphasis added.) Finally, the agreement stated that the parties "do hereby expressly affirm and ratify that certain Memorandum Settlement Agreement executed by and between them on May 9, 2013, and further affirm and ratify their direction to their respective counsel . . . to enter judgments of dismissal with prejudice of [the three cause numbers listed in the Memorandum Settlement Agreement]."

¶13. The chancellor dismissed the suit with prejudice based on the parties' settlement. The judgment also noted that the chancellor would "retain jurisdiction of this matter for the sole purpose of enforcing the May 9, 2013 Memorandum Settlement Agreement between the parties."

### *Rolison's Amended Motion to Dismiss and Hearing in Circuit Court*

¶14. Back in circuit court, Rolison amended his still-pending motion to dismiss in light of the settlement and dismissal in chancery court, arguing that *res judicata* now barred Hinton's claims. Rolison claimed that the title-and-rent case settled in chancery court shared the necessary identities with the partnership dispute here, and that "the specific claims asserted in the present case were asserted in at least one of the three previous causes of action and a Judgment of Dismissal with Prejudice has been entered."

¶15. After a hearing, the trial court granted Rolison's motion to dismiss, stating in his order that

> Hinton and Rolison have been involved in three other lawsuits involving Lincoln Road Autoplex. The claims Hinton pled in this action are identical to the claims he brought in one or more of those lawsuits that have been

6

dismissed with prejudice. Accordingly, the claims Hinton exerts in the instant case are barred by the doctrine of *res judicata*.

By the same order, the trial court dismissed Hinton's claims against Credit Acceptance for failure to state a viable claim for injunctive relief.

### *Hinton's Motion for Reconsideration*

¶16. At a hearing on Hinton's motion to reconsider, Hinton argued that Rolison had misrepresented which claims were settled and dismissed in the chancery-court action. Hinton claimed that, contrary to what Rolison had represented to the trial court, "[t]his case and the claims arising hereunder are separate and unrelated to prior claims between the parties." He also explained what the different claims were—a forged deed and unpaid rent in the chancery case, and failure to distribute profits in this circuit-court case—and pointed out that the parties specifically had excluded this action from the settlement and dismissal. Hinton argued at the hearing that Rolison had misrepresented the terms of the settlement by not attaching the most detailed recitation of those terms, the Memorandum Settlement Agreement.

¶17. The trial court, however, placed more weight on general language in the Mutual Release Agreement than the provisions of the Memorandum Settlement Agreement that specified which suits were and were not being settled:

> All I'm going by is that in the first and second paragraph of the mutual release agreement, which is the best evidence, it says that the parties seek to resolve, settle and terminate all their disputes with the ownership of the subject property.
>
> And I don't know how differently I could see that if it was a court of equity or if there were other circumstances. But under Rule 60, this Court must . . . find

7

either that there was fraud or a mistake made or an accident. And the Court does not find, based on even your testimony, that there was fraud, accident or mistake of any kind made.

. . . .

I do acknowledge the word "identical" is confusing in the order and stand corrected on that . . . .

The trial court denied Hinton's motion to reconsider without a written opinion, and now Hinton appeals, raising two issues:

> **1. Did the circuit court err by finding that *res judicata* barred this auto dealer partnership dispute due to a settled chancery case involving a clouded title to real property?**

> **2. Did the Complaint state a viable claim against Credit Acceptance?**

## STANDARD OF REVIEW

¶18. Whether to apply *res judicata* is a question of law, which we review *de novo*. ***Global Oceanic Enter., Inc. v. Hynum***, 857 So. 2d 659, 661 (Miss. 2003) (citing ***Saliba v. Saliba***, 753 So. 2d 1095, 1098 (Miss. 2000)). We also review *de novo* the grant or denial of a motion to dismiss. ***Strait v. McPhail***, 145 So. 3d 664, 668 (Miss. 2014) (citing ***Scaggs v. GPCH-GP, Inc.***, 931 So. 2d 1274, 1275 (Miss. 2006)).

## ANALYSIS

### I. *Res judicata* does not bar Hinton's claims against Rolison.

¶19. "Generally, four identities must be present before the doctrine of *res judicata* will be applicable: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made." ***Anderson v. LaVere***, 895 So. 2d 828, 832 (Miss. 2004) (quoting ***Dunaway v. W.H. Hopper & Assocs., Inc.***, 422 So. 2d 749, 751 (Miss.

8

1982)).  When those identities are present, *res judicata* precludes "parties from litigating in a second action claims within the scope of the judgment of the first action." ***Anderson***, 895 So. 2d at 832 (citing ***McIntosh v. Johnson***, 649 So. 2d 190, 193 (Miss. 1995), *overruled on other grounds by* ***Norman v. Bucklew***, 684 So. 2d 1246 (Miss. 1996). The defendant bears the burden of proving *res judicata* as a defense. ***Id.*** (citing ***Pate v. Evans***, 97 So. 2d 737, 739 (Miss. 1957)).

¶20.    Rolison argues that *res judicata* bars Hinton's claims, but we find that this lawsuit was not "within the scope of the judgment of the first action" because the parties agreed it would not be.  The Memorandum Settlement Agreement specifies that "[t]he only remaining claims and causes of action among the parties are those contained in the Civil Action identified as *Clayton Hinton v. Nate Rolison, Individually; Nate Rolison d/b/a Lincoln Road Autoplex; and Credit Acceptance Corporation, Inc.*"  That is this case.

¶21.    Both the Mutual Release Agreement and the Judgment of Dismissal specify that the Memorandum Settlement Agreement remained in force.  In the Mutual Release Agreement, the parties "expressly affirm[ed] and ratif[ied] that certain Memorandum Settlement Agreement executed by and between them on May 9, 2013 . . . ."  And in the Judgment of Dismissal with Prejudice, the chancery court "retain[ed] jurisdiction of [that] matter for the sole purpose of enforcing the May 9, 2013 Memorandum Settlement Agreement between the parties."  Rolison has pointed to nothing in the record that contradicts the intent that was reflected in the Memorandum Settlement Agreement and the Mutual Release Agreement, and

9

which was confirmed in the Judgment of Dismissal. That is, Hinton and Rolison agreed that they were not settling this case.

¶22. And we find additionally that Rolison is bound by that agreement, regardless of whether the *res judicata* identities are present. Two principles of our law lead to this conclusion. The first is that *res judicata* is an affirmative defense that may be waived. *See, e.g.*, *Wholey v. Cal-Maine Foods, Inc.*, 530 So. 2d 136, 138 (Miss. 1988) (citing *Bell v. First Columbus Nat'l Bank*, 493 So. 2d 964, 968 (Miss. 1986)). The second is that "we apply contract law analysis to settlement agreements." *See, e.g.*, *Chantey Music Publ'g., Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1056 (Miss. 2005) (citing *East v. East*, 493 So. 2d 927, 932–933 (Miss. 1986)). Within that analysis, "'[t]he primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1162 (Miss. 2007) (quoting *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So. 2d 107, 110 (Miss. 2005)).

¶23. We find the Eleventh Circuit's opinion in *Norfolk Southern Corp. v. Chevron U.S.A., Inc.*, 371 F. 3d 1285 (11th Cir. 2004), instructive on how these two principles apply in the settlement-agreement context. That court explained that when "the parties consent to . . . a dismissal based on a settlement agreement . . . the principles of *res judicata* apply (in a somewhat modified form) to the matters *specified in the settlement agreement*, rather than the original complaint." *Id.* at 1288 (emphasis added). This is due to *res judicata* being an affirmative defense that can be waived:

> When a defendant signs a settlement agreement stating that only some claims
> will be precluded in the future, it is as if the defendant is preemptively waiving

10

any potential *res judicata* defense he would have had as a result of the dismissal to which the parties consent under the agreement. Thus, [a] . . . settlement agreement may fairly be read as waiving certain *res judicata* rights to which the dismissal would otherwise give rise.

*Id.* at 1289. Such a waiver can operate either inclusively or exclusively. That is, parties may agree that "only some claims will be precluded in the future," or they may "make[] an 'express reservation' of the right to sue on a particular claim in the future." *Id.* "In both cases, 'the preclusive effect of the earlier judgment is determined by the intent of the parties.'" *Id.* at 1289–90 (quoting *Keith v. Aldridge*, 900 F. 2d 736, 740–41 (4th Cir. 1990)). Courts focus on the parties' intent because "a settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation." *Id.* at 1290 (citing *Monaham v. Comm'r*, 321 F. 3d 1083, 1068 (11th Cir. 2003)).

¶24. Here, the parties made their intent abundantly clear when they used a belt (only certain suits were being settled) and suspenders (this suit was *not* being settled) to define the scope of the settlement agreement. Thus we find that with regard to this lawsuit Rolison "preemptively waiv[ed] any potential *res judicata* defense he would have had as a result of the dismissal to which the parties consent[ed] under the agreement." *Id.* at 1289. Rolison does not claim that the Memorandum Settlement Agreement is unenforceable, nor does he argue that this suit is not the suit that was excluded from that agreement; he argues that the four identities are present and the claims should have been brought in the earlier action. But this argument does him no good. Whether the identities are present or not, *res judicata* is no longer available to him as a defense because he agreed it would not be. This issue is without merit.

11

**II. Hinton is not entitled to injunctive relief against Credit Acceptance.**

¶25. Before issuing a preliminary injunction, a trial court must find four things:

> [That] 1) there exists a substantial likelihood that the plaintiff will prevail on the merits; 2) the injunction is necessary to prevent irreparable harm; 3) the threatened injury to the plaintiff outweighs the harm an injunction might do to the defendants; and 4) granting a preliminary injunction is consistent with the public interest.

*Littleton v. McAdams*, 60 So. 3d 169, 171 (Miss. 2011) (citing *City of Durant v. Humphreys Cty. Mem'l Hosp.*, 587 So. 2d 244, 250 (Miss. 1991); Miss. R. Civ. P. 65(a)). "Under traditional rules of equitable relief, a plaintiff bears the burden of showing the need for injunctive relief." *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 568 (Miss. 2010) (citing *Moore v. Sanders*, 558 So. 2d 1383, 1385 (Miss. 1990)).

¶26. Hinton sought an injunction that would prevent Credit Acceptance from paying Rolison because Hinton might some day win a judgment entitling him to those profits. He did not allege any sort of contractual agreement with Credit Acceptance, or that Credit Acceptance should be paying *him* the money it was paying Rolison. Hinton's sole argument for an injunction against Credit Acceptance is that Rolison should be sharing the money he gets from Credit Acceptance because of Rolison's agreement with Hinton.

¶27. "Mississippi courts 'are not authorized to resolve every claim and dispute that may arise between our citizens. The plaintiff must file a complaint which alleges some cognizable claim or cause of action against the defendant.' " *Greater Fairview Missionary Baptist Church v. Hollins*, 160 So. 3d 223, 229 (Miss. 2015) (quoting *In re Bell*, 962 So. 2d 537, 541 (Miss. 2007)). We find that Hinton has alleged no "cognizable claim or cause of

12

action" against Credit Acceptance. *Id.* As a final note, the only harm Hinton has alleged is a loss of money, and such a loss is reparable, not irreparable. Hinton's damages suit against Rolison implicitly acknowledges as much. This issue is without merit.

### CONCLUSION

¶28.    In sum, Rolison waived the affirmative defense of *res judicata* by agreeing that these claims would survive the previous settlement and dismissal. As such, we reverse the Lamar County Circuit Court's dismissal of Hinton's claims against Rolison and remand this case for further proceedings. As for Credit Acceptance, Hinton failed to allege any legally cognizable claim for injunctive relief, and we affirm the circuit court's dismissal of that claim.

¶29.    **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

13