[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3,, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-14473

_____

D.C. Docket No. 00-00366-CV-J-21HTS

NORFOLK SOUTHERN CORPORATION,
GEORGIA SOUTHERN AND FLORIDA
RAILWAY COMPANY,

                                        Plaintiffs-Appellants,

versus

CHEVRON, U.S.A., INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(JUNE 3, 2004)

Before TJOFLAT and HILL, Circuit Judges, and MILLS*, District Judge.

_____

  * Honorable Richard Mills, United States District Court for the Central District of
Illinois, sitting by designation.

TJOFLAT, Circuit Judge:

The St. Johns River Terminal Company leased a tract of land (the "Leased Site") in Jacksonville, Florida, to the Gulf Oil Corporation from 1906 to 1961. Gulf constructed above-ground tanks on the land to store oil and fuel. In 1977, the United States Coast Guard informed St. Johns that oil was leaking from the Leased Site onto the surface of the nearby Long Branch Creek and required St. Johns to remediate the leakage at its own expense. St. Johns sued Gulf for reimbursement for the cost of the cleanup.

Prior to trial, the parties settled. Gulf agreed to pay St. Johns $163,000 to help cover the cost of the containment efforts, and St. Johns executed a release, stating:

> St. Johns River Termianl [sic] Company does hereby release and forever discharge said Gulf Oil Company, its successors and assigns, from any and all actions, causes of action, claims and demands for, upon or by reason of any damage, loss or injury, which heretofore has been or which hereafter may be sustained by St. Johns River Terminal Company arising out of any contamination by oil of the Talleyrand Terminal property in Jacksonville, Florida, which is alleged to have occurred during Gulf Oil Corporation's use and occupancy of said property and all those matters alleged in [St. Johns's 1977 lawsuit].

> This release extends and applies to, and also covers and includes, all unknown, unforeseen, unanticipated and unsuspected injuries, damages, loss and liability, and the consequences thereof, arising out of said alleged oil contamination, as well as those now disclosed and known to exist.

2

We shall refer to this as the "Settlement Agreement." Once the parties entered into this Agreement, the district court entered a judgment of dismissal with prejudice (the "1977 Dismissal") based upon the parties' joint stipulation, stating, "It is hereby agreed by and between all parties that the above entitled cause has been compromised and settled and that this cause is dismissed with prejudice under Rule 41 of the Federal Rules of Civil Procedure . . . ."

The plaintiffs, Norfolk Southern Corporation and Georgia Southern and Florida Railway Company (collectively, "Norfolk"), are the successors-in-interest to St. Johns. The defendant, Chevron, is the successor-in-interest to Gulf. In 1999, Norfolk discovered that contamination from oil storage tanks on the Leased Site had leaked onto an adjacent salt marsh ("the Marsh"). The contaminants are known as "tank bottoms" because they formed from the sludge that accumulated at the bottom of the storage tanks.

Norfolk sued Chevron under both the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675, and Florida common law, seeking reimbursement of expenses that it has incurred and will incur in cleaning up the leakage. The district court granted Chevron summary judgment, concluding that Norfolk's claims were barred by the <u>res</u>

judicata effect of the 1977 Dismissal. It held that a dismissal entered pursuant to a settlement agreement is presumed to have the same res judicata effect as any other judgment, although the scope of this preclusive effect may be limited by the agreement into which the parties entered.

The district court explained that a claim that would typically be barred under res judicata may be preserved only if a party makes a "clear expression" of a "reservation of right" to bring suit on the basis of that claim in the future. Because the Settlement Agreement did not expressly allow St. Johns (Norfolk's predecessor-in-interest) to bring any future claims regarding contamination of the Leased Site, the court held that the Agreement did not curtail the scope of traditional res judicata principles. Applying those principles, the court held that Norfolk's current claim was precluded and dismissed the case. Norfolk appeals, arguing that it should be entitled to proceed with its lawsuit.

Because res judicata determinations are pure questions of law, we review them de novo. Israel Discount Bank Ltd. v. Entin, 951 F.2d 311, 314 (11th Cir. 1992). We disagree with the district court's analysis because, although the 1977 dismissal has a res judicata effect, that effect is controlled by the Settlement Agreement into which the parties entered. In the absence of a settlement agreement, of course, a judgment of dismissal pursuant to Rule 41 should be given

4

the same <u>res judicata</u> effect as any other judgment. <u>See</u> <u>Astron Indus. Assoc., Inc.</u> <u>v. Chrysler Motors Corp.</u>, 405 F.2d 958, 960 (5th Cir. 1968) ("[A] stipulation of dismissal with prejudice . . . normally constitutes a final judgment on the merits which bars a later suit on the same cause of action.").[1] Where the parties consent to such a dismissal based on a settlement agreement, however, the principles of <u>res judicata</u> apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint.

A judgment dismissing an action with prejudice based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it. In the closely related context of consent decrees, we have recognized the importance of confining their scope to matters upon which the parties have consented. <u>United States v. Miami</u>, 664 F.2d 435, 440 (5th Cir. 1981) (en banc) (Rubin, J., concurring) ("Even in a two-party litigation the parties may agree on as much as they can, ask the court to incorporate that agreement into a consent decree, and call upon the court to decide the issues they cannot resolve."). The expressed intent of the parties is also the determining factor in whether a consent-based

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

judgment is given collateral estoppel effect. See Balbirer v. Austin, 790 F.2d 1524, 1528 ("[A] consent judgment cannot constitute collateral estoppel unless the party pleading collateral estoppel proves from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue.").

In determining the res judicata effect of an order of dismissal based upon a settlement agreement, we should also attempt to effectuate the parties' intent. The best evidence of that intent is, of course, the settlement agreement itself. Consequently, the scope of the preclusive effect of the 1977 Dismissal should not be determined by the claims specified in the original complaint, but instead by the terms of the Settlement Agreement, as interpreted according to traditional principles of contract law. See W.J. Perryman & Co. v. Penn Mut. Fire Ins. Co., 324 F.2d 791, 793 (5th Cir. 1963) ("The compromise, settlement and release are as conclusive as a judgment would have been if the claim had been litigated rather than compromised and settled. The dismissal with prejudice adds res judicata to the release as barring recovery by the appellant." (citation omitted; emphasis added)); see also Barber v. Int'l Brotherhood of Boilermakers, 778 F.2d 750, 758 (11th Cir. 1985) ("[W]e respect the parties' clear contractual intent . . . to give the release preclusive effect . . . .").

6

It might be argued that this way of applying <u>res judicata</u> to dismissals predicated upon settlement agreements does not adequately respect the fact that such a dismissal is an actual judgment. We believe it does, however, for two reasons. First, <u>res judicata</u> is an affirmative defense which must be pled, and may be waived, by the defendant. <u>Louisville & N.R. Co. v. M/V Bayou Lacombe</u>, 597 F.2d 469, 471 n.1 (5th Cir. 1979) ("Res judicata is an affirmative defense. That defense was waived when the defendant failed to raise it below."). When a defendant signs a settlement agreement stating that only some claims will be precluded in the future, it is as if the defendant is preemptively waiving any potential <u>res judicata</u> defense he would have had as a result of the dismissal to which the parties consent under the agreement. Thus, we are not treating a dismissal based upon a joint stipulation differently than any other judgment; we simply recognize that a concomitantly created settlement agreement may fairly be read as waiving certain <u>res judicata</u> rights to which the dismissal would otherwise give rise.

Another important consideration is that, even under the caselaw the defendant cites, parties may avoid part of the <u>res judicata</u> effect of a consent-based dismissal simply by making an "express reservation" of the right to sue on a particular claim in the future. See, e.g., <u>Epic Metals Corp. v. H.H. Robertson Co.</u>,

7

870 F.2d 1574, 1576 (Fed. Cir. 1989) (stating that, in order to avoid the full res judicata effect of a stipulated judgment of dismissal, parties must "expressly reserve in a consent judgment the right to relitigate some or all issues that would have otherwise been barred"). While we wholeheartedly agree with such decisions, we feel that they unduly constrain the right of parties to shape the res judicata effect of a consent-based dismissal. If we will enforce the parties' intent when they list the types of suits that may be brought in the future, it seems inconsistent to ignore their intent when the parties agree to an exclusive list of the suits that are subject to preclusion (thereby implicitly allowing all other claims to be brought in the future). Both methods of phrasing a settlement agreement are functionally equivalent ways of doing the same thing, and we do not see a need to treat an express description of claims excepted from res judicata any differently from an express description of claims subject to res judicata. In both cases, "the preclusive effect of the earlier judgment is determined by the intent of the parties." See, e.g., Keith v. Aldridge, 900 F.2d 736, 740-41 (4th Cir. 1990).

Under the approach we adopt today, the district court erred in beginning its analysis by first assuming that res judicata applied in full to all of the claims in the original 1977 complaint and then "carving out" from the scope of this preclusive effect only those claims that St. Johns expressly reserved in the Settlement

8

Agreement. Instead, the court should have looked to the Settlement Agreement to determine what claims it precluded from future litigation.

Norfolk contends that we must look beyond the terms of the Settlement Agreement itself to determine the full range of claims that the parties intended to preclude in the future. As Norfolk points out, however, a settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation. Monahan v. Comm'r, 321 F.3d 1063, 1068 (11th Cir. 2003) ("Principles governing general contract law apply to interpret settlement agreements." (quotation marks and citation omitted)). Where the plain meaning of an agreement is clear, we may not go beyond the four corners of the document to look for additional evidence of the drafters' intentions. See Restatement (Second) of Contracts ch. 9, introductory note (1981) ("Where the parties have adopted a writing as the final expression of all or part of their agreement, interpretation focuses on the writing, and its terms may supercede other manifestations of intention."); see also Monahan, 321 F.3d at 1068 ("If the agreement is found to be free of ambiguity, its meaning can be declared by the court without the use of extrinsic evidence.").

Here, the Settlement Agreement clearly specifies the range of claims subject to preclusion. St. Johns released Gulf from any liability for "damage, loss or

9

injury, which heretofore has been or which hereafter may be sustained by St. Johns River Terminal Company arising out of any contamination by oil of the [Leased Site]." By implication, this Agreement does not cover: (1) any damage arising due to contamination by anything other than oil (such as tank bottoms), or (2) any damage arising due to contamination of an area other than the Leased Site by oil, if such contamination occurred directly (that is, if it was not dependent upon contamination of the Leased Site). The scope of the release contained within the Agreement does not touch upon these subjects. Consequently, an "express reservation" of a right to sue was unnecessary to allow Norfolk to bring its current claims. Because Norfolk's claims are predicated upon leakage of nonoil contaminants (tank bottoms), they are outside the scope of the Settlement Agreement, which addressed only oil contamination, and Norfolk's current suit may proceed.

We recognize that res judicata typically precludes not only the specific claims brought in a complaint, but any other claims that stem "out of the same nucleus of operative fact, or is based upon the same factual predicate." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999) (quotation marks and citation omitted). In making these determinations, courts assess a variety of factors, including whether the later claims involve the same statutes, evidence,

10

events or occurrences, parties, and witnesses. Id. Under these traditional res judicata principles, judgment in a suit based on oil contaminants would in all likelihood bar a subsequent suit based on other, nonoil contaminants from the same source. A major function of the doctrine of res judicata is to prevent piecemeal litigation, see Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 157-58 (3d Cir. 2001), and allowing suits to be split in this way would frustrate that goal.

For the reasons discussed above, however, we believe that a settlement agreement entered into in the context of a voluntary dismissal with prejudice under Rule 41 should be interpreted according to its express terms, rather than according to traditional principles of res judiciata. The Supreme Court held, in United States v. Armour & Co., in the related context of consent decrees, "Because the defendant has, by the [consent] decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and the instrument must be construed as it is written." 402 U.S. 673, 682, 91 S. Ct. 1752, 1757, 29 L. Ed. 2d 256 (1971). Here, also, the court's dismissal is predicated upon the Settlement Agreement; to preclude a wider range of matters than those specified in the Agreement would frustrate the parties' expressed intent and bestow upon Chevron a windfall of immunity from litigation.

In conclusion, where the parties stipulate to having a case dismissed, a somewhat modified form of res judicata applies to the written settlement agreement upon which such dismissal is predicated, if one exists. In the instant case, the Settlement Agreement did not preclude future suits based on nonoil contaminants, or based on contamination of other areas that did not stem from contamination of the Leased Site. Consequently, Norfolk's suit against Chevron may proceed. In light of this holding, we need not reach any of the other issues raised by the parties.

The judgment of the district court is REVERSED.