[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12202

Non-Argument Calendar

_____

THE PALMS OF DESTIN CLUB, LLC,

Plaintiff-Appellant,

*versus*

COMMUNICATIONS PROCESSING SYSTEMS INC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:20-cv-05386-HTC

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

The Palms of Destin Club, LLC appeals the magistrate judge's denial of its motion for summary judgment and the court's grant of summary judgment to Communication Processing Systems Inc. (CPS), a telecommunications provider.[1] The Palms of Destin Club argues that the district court erred in determining that CPS is not subject to the exclusivity prohibitions of Section 628 of the Communications Act of 1934 (codified at 47 U.S.C. § 548) and implementing Federal Communications Commission (FCC) regulations, and that its claim for declaratory relief is barred by res judicata. After review, we affirm.

## I.    Background

The Palms Resort is a condominium development developed by DRB Development, LLC (the Development Company), consisting of two towers and related property, including a clubhouse and other amenities. The Palms Resort properties are governed by certain Declarations, Covenants, and Restrictions, recorded on January 2, 2007. While the Development Company sold the condominium units to the unit owners, it maintained ownership of the communal clubhouse property through The

---

[1] The parties consented to the magistrate judge conducting the underlying proceedings and entering final judgment.

Palms of Destin Resort, Inc., a Florida company controlled by one of the Development Company's affiliates, Becnel/Kelly Club, LLC. The Palms of Destin Resort and Conference Center Condominium Association, Inc. (the Condo Association) is the owners' association for the Palms Resort which collected member dues and paid them to the owners of the clubhouse property, The Palms of Destin Resort, Inc.

Pursuant to the initial Declarations, Covenants, and Restrictions, the Development Company reserved the right to construct and install "over, through, under, across and upon any portion of the Property for the use of the [unit] [o]wners, one or more cable and/or telecommunication" systems. The Development Company also reserved a "perpetual and exclusive right, privilege, easement and right of way for the installation, construction, and maintenance of the System, together with perpetual and exclusive right and privilege" of "[u]nlimited ingress and egress" for "installing, constructing, and inspecting, repairing, maintaining, altering, moving, improving, and replacing the facilities and equipment constituting the System."

Under the initial Declarations, Covenants, and Restrictions, the Development Company and The Palms of Destin Resort, Inc. also retained "the right to enter contracts for the exclusive provision of the System" as they deemed, "in their sole respective discretion, to be in the best interest of the Property."

In March 2007, Becnel/Kelly Club—the entity that controlled The Palms of Destin Resort, Inc.—entered into a service

agreement contract with CPS, another entity affiliated with the Development Company, under which CPS would be the telecommunications provider to the Palms Resort. Under the agreement, CPS would charge each unit $75.00 per month for services for a term of ten years, renewable annually when the term expired. To facilitate the service agreement contract, the Development Company entered into other agreements with CPS, including a lease agreement and the grant of a non-exclusive utility easement and utility facilities quitclaim deed.

In 2015, the Condo Association sued CPS (as well as Becnel/Kelly Club and the Development Company) for violating 47 U.S.C. § 548 and 47 C.F.R. § 76.2000, which prohibit cable operators from harming competition through exclusivity agreements. [2] *The Palms of Destin Resort and Conference Center Condominium Assoc., Inc. v. Communications Processing Systems, Inc.*, Case No. 3:15-cv-212 (N.D. Fla. 2015). 47 U.S.C. § 548 states:

> It shall be unlawful for a cable operator, a satellite cable programming vendor in which a cable operator has an attributable interest, or a satellite broadcast programming vendor to engage in unfair methods of

---

[2] The Condo Association also sued the parties in state court on other grounds. The state case was settled with the federal case in the Palms Settlement Agreement.

> competition or unfair or deceptive acts or practices, the purpose or effect of which is to hinder significantly or to prevent any multichannel video programming distributor from providing satellite cable programming or satellite broadcast programming to subscribers or consumers.

47 U.S.C. § 548.   This statute also empowers the FCC to promulgate regulations for this purpose. *Id.* § 548(a)–(c).  One such regulation, 47 C.F.R. § 76.2000, states that:

> No cable operator or other provider of [multichannel video programming distributor] service subject to 47 U.S.C. 548 shall enforce or execute any provision in a contract that grants to it the exclusive right to provide any video programming service (alone or in combination with other services) to a [multiple dwelling unit building].  All such exclusivity clauses are null and void.

47 C.F.R. § 76.2000(a).  In the 2015 lawsuit, the Condo Association alleged that the Development Company created the Declarations, Covenants and Restrictions to ensure that its affiliate Becnel/Kelly Club retained easements and exclusive access to telecommunications infrastructure so it could grant a telecommunications contract to another affiliate, CPS.  Count 1 of the 2015 complaint against CPS alleged that the "various contracts and affiliated operations of the three defendants . . . are in violation of 47 U.S.C. § 548 and 47 C.F.R. § 76.2000" and asked the court to

void the agreements making CPS the exclusive telecommunications provider for the Palms Resort. Counts 2 and 3 of the complaint asserted the same claims against Becnel/Kelly Club and the Development Company.

The Condo Association, CPS, Becnel/Kelly Club, and the Development Company settled the federal and state cases in January 2016.[3] The parties executed a settlement agreement (the Palms Settlement Agreement) and filed a stipulation of dismissal in the state and federal courts, and on March 21, 2016, the district court issued a judgment of dismissal with prejudice.

The Palms Settlement Agreement contained a "Releases/Dismissals" section, which said that, after "full performance of all their various obligations," the parties would "execute mutually acceptable releases releasing the applicable Party and their successors and assigns from any further liability under the agreed upon obligation." The settlement agreement also stated that:

> CPS is the exclusive provider of cable, telephone, internet, telecommunications, and receiving and distribution systems . . . servicing the Palms Resort and unit owners in the Resort community. The parties acknowledge that CPS invested significant capital in developing the infrastructure for the

---

[3] Non-parties with disputes with the Condo Association were also included in the settlement.

Telecommunication System that services the Palms Resort. CPS and Association have reached an agreement to upgrade the Telecommunications System as shown in attached Exhibit "H," which will be executed simultaneously with this Agreement.

As part of the Palms Settlement Agreement, the Condo Association and CPS executed an Agreement as to CPS Services and Charges that was attached to the settlement agreement as Exhibit H and an Option Agreement that was attached as Exhibit A to the settlement agreement. Exhibit H, the Agreement as to CPS Services and Charges, acknowledged the litigation and stated that the two parties to the agreement, the Condo Association and CPS, "wish to reach an Agreement for the benefit of all Parties involved and for the health of the community moving forward." CPS and the Condo Association also agreed that CPS would upgrade its television, internet, and telephone services, while the Condo Association agreed to a schedule of payments through 2021 and beyond.

The Option Agreement, Exhibit A of the settlement agreement, gave the Condo Association the right to purchase the clubhouse property from Becnel/Kelly Club free of encumbrances except "the existing easement, agreements, and leases between [Becnel/Kelly Club]" and "CPS." The Condo Association and Becnel/Kelly Club executed a Purchase Agreement on May 16, 2016. Under the Purchase Agreement, the Condo Association agreed to purchase the clubhouse property subject to any leases or

agreements existing at the time. The Purchase Agreement also included a reservation of the right for Becnel/Kelly Club to extend the CPS service agreement for an additional forty years, which it did on October 31, 2016, in an addendum to the original service agreement between Becnel/Kelly Club and CPS.

The Purchase Agreement required that the Condo Association form a new entity to hold title to the clubhouse property after the sale, which it did. The new entity created was The Palms of Destin Club, the plaintiff in this lawsuit. The Condo Association is the sole managing member of The Palms of Destin Club. To complete the transfer of the property from Becnel/Kelly Club to the new entity, the Condo Association, Becnel/Kelly Club, and The Palms of Destin Club executed an addendum to the Settlement Agreement in which The Palms of Destin Club agreed to "be bound by the terms, conditions and obligations set forth" in the Palms Settlement Agreement.

The Palms of Destin Club, the Condo Association, and the Development Company also executed an amendment to the original Declarations, Covenants, and Restrictions governing The Palms Resort, re-defining the owner of the clubhouse property as The Palms of Destin Club (rather than Becnel/Kelly Club), and amending the declarations to provide that CPS "shall be the sole and exclusive provider of television, cable, internet and telephone services" to the Palms Resort.

On April 13, 2020, The Palms of Destin Club filed a complaint in the Northern District of Florida seeking a declaratory judgment

that the "various documents designating CPS as an exclusive service provider for The Palms community violate" 47 C.F.R. 76.2000 and 47 C.F.R. § 64.2500[4] and are void. The relevant portion of 47 C.F.R. § 64.2500 states:

> No common carrier shall enter into or enforce any contract, written or oral, that would in any way restrict the right of any residential multiunit premises owner, or any agent or representative thereof, to permit any other common carrier to access and serve residential tenants on that premises.

47 C.F.R. § 64.2500(b).

The case was referred to a magistrate judge. CPS filed a motion to dismiss that was denied. The parties filed cross-motions for summary judgment. The magistrate judge granted CPS's motion for summary judgment, holding that the case was barred by res judicata and, even if it was not, CPS is not a cable operator subject to 47 U.S.C. § 548. The magistrate judge denied The Palms of Destin Club's motion for summary judgment. The Palms of Destin Club appeals.

## II.    Standard of Review

We review a district court's grant of summary judgment *de novo*, "view[ing] the evidence in the light most favorable to the

---

[4] While the Condo Association sued under 47 C.F.R. § 76.2000 in the 2015 lawsuit, it had not previously sued under 47 C.F.R. § 64.2500.

10                    Opinion of the Court                    21-12202

non-moving party." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quotations omitted). Summary judgment is proper if the materials in the record indicate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c). "We also review de novo a district court's determination of res judicata or collateral estoppel." *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1285 (11th Cir. 2004). "However, whether a party is in privity with another for preclusion purposes is a question of fact that is reviewed for clear error." *Id.*

### III.    Discussion

#### A.  The Palms of Destin Club's Claim for Declaratory Relief

The Palms of Destin Club argues that because it was not formed as a corporate entity until after the Palms Settlement Agreement was executed, res judicata does not bar its claim seeking declaratory relief to void its contract with CPS. Additionally, The Palms of Destin Club argues that because CPS is a multichannel video programming distributor and cable provider, it cannot enter into exclusivity agreements under federal law.[5] We disagree with

---

[5] The Palms of Destin Club does not argue that res judicata should not apply to the current cause of action because it sued for violations of 47 C.F.R. § 64.2500(b), a regulation not implicated in the 2015 suit. However, the Palms of Destin Club does not contest the magistrate judge's finding that "[t]here is no dispute in this case that the claims raised in this suit are duplicative of the claims raised by the COA against CPS in prior litigation."

21-12202                Opinion of the Court                    11

The Palms of Destin Club and hold that res judicata bars this action.

Res judicata applies when "a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001).

> Res judicata may be properly applied only if certain prerequisites are met.  In the Eleventh Circuit, a party seeking to invoke the doctrine must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.

*Id.* (citations omitted).  If one of these elements is missing, res judicata does not apply.  *Id.*  The burden is on the party asserting res judicata (here, CPS) to show that the doctrine applies.  *Id.*

Under the third element of res judicata, if the cases do not involve the same parties, res judicata may still bar a subsequent action when a party in the new suit is in privity with one involved in the prior decision.  Privity

> is defined as a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should

> bind or protect the nonparty. Privity exists where the nonparty's interests were represented adequately by the party in the original suit. Privity also exists where a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative.

*NAACP v. Hunt*, 891 F.2d 1555, 1560–61 (11th Cir. 1990) (quotations omitted). Additionally, "[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (quotation omitted).

A stipulated dismissal with prejudice ordinarily has res judicata effect. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004). However, when the "consent to such a dismissal [is] based on a settlement agreement, the principles of res judicata apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint." *Id.* at 1288. To determine if the parties intended resolve specific claims, the court should use principles of contract interpretation, because a settlement is essentially a contract. *Id.* at 1289. "The best evidence of that intent is, of course, the settlement agreement itself." *Id.* at 1289. "A settlement agreement entered into in the context of a voluntary dismissal with prejudice under Rule 41 should be interpreted according to its express terms, rather than according to traditional principles of res judicata." *Id.* at 1291.

It is undisputed that the federal court in the previous litigation had competent jurisdiction to dismiss the suits with prejudice.  It is also undisputed that a dismissal with prejudice is a final judgment on the merits, and that the current complaint and the previous federal complaint involved the same claim—that federal telecommunications law bars the exclusivity agreement between The Palms of Destin Club and CPS.  Therefore, elements one, two, and four of res judicata are met.

The Palms of Destin Club argues that the third element, sameness in parties or privity, was not met because The Palms of Destin Club was not formed until October 2016, after the January 2016 Palms Settlement Agreement, and therefore was not a party to the agreement.  The Palms of Destin Club also argues that even if the parties were the same, res judicata should not bar its suit against CPS because the text of the Palms Settlement Agreement itself does not display an intent to prevent any future company from bringing federal claims against CPS in the future.

Although it is true that The Palms of Destin Club did not yet exist when the settlement agreement was signed, the Condo Association, which is the sole member of The Palms of Destin Club, did exist.  The Palms of Destin Club's "interests were represented adequately by the party in the original suit," the Condo Association, because the Condo Association was a party to the original suit and now has sole control over The Palms of Destin Club.  *See Hunt*, 891 F.2d at 1560–61 ("Privity exists where the nonparty's interests were represented adequately by the party in

the original suit."). The Palms of Destin Club also "agree[d] to be bound by the terms, conditions, and obligations set forth in the [Palms Settlement] Agreement" in an addendum to the Palms Settlement Agreement made in October 2016 and is therefore "bound in accordance with the terms." *See Taylor*, 553 U.S. at 893. Accordingly, The Palms of Destin Club is in privity with the Condo Association for the purposes of res judicata.

Having determined that The Palms of Destin Club is in privity with the Condo Association and agreed to be bound by the settlement agreement, we now look to the text of the Palms Settlement Agreement to determine if, by its express terms, the parties intended to settle the question of the agreement's compliance with federal telecommunications law in a preclusive manner. *See Norfolk S. Corp.*, 371 F.3d at 1291.

The settlement agreement contains a "Releases/Dismissals" section, which states that, "upon full performance of all their various obligations in this Agreement, the Parties shall execute mutually acceptable releases releasing the applicable Party and their successors and assigns from any further liability under the agreed upon obligation." The settlement states that

>Pursuant to section 14.13 of the Restrictive Covenants, CPS is the exclusive provider of cable, telephone, internet, telecommunications, and receiving and distribution systems . . . servicing the Palms Resort and unit owners in the Resort

> community. The parties acknowledge that CPS invested significant capital in developing the infrastructure for the Telecommunication System that services the Palms Resort. CPS and Association have reached an agreement to upgrade the Telecommunications System as shown in attached Exhibit "H," which will be executed simultaneously with this Agreement.

One "express term" of the settlement is therefore the "obligation" of The Palms of Destin Club to accept CPS as the "exclusive provider of cable, telephone, internet, telecommunications, and receiving and distribution systems . . . servicing the Palms Resort and unit owners in the Resort community." *See id.* The Palms Settlement Agreement therefore specifically releases CPS, "the applicable party . . . from any further liability under the agreed upon obligation," exclusive provision of telecommunications services. Applying the "Releases/Dismissals" provision to this obligation indicates the parties' intent to resolve the claims for violations of federal exclusivity prohibitions.

Additionally, in the Agreement to CPS Services and Charges that was attached to the Palms Settlement Agreement the parties also agreed to another obligation, that CPS would upgrade its television, internet, and telephone services and, in exchange, the Condo Association would pay CPS an increasing amount yearly through 2021 and beyond. The settlement agreement and addendums do not contain an "express reservation of the right to

sue" CPS for violations of the federal telecommunications law in the future. *See Norfolk*, 371 F.3d at 1289. Instead, the plain text of the settlement and addendums indicate that the intent of the parties was that "upon full performance of all their various obligations in this Agreement," including Exhibit H's list of improvements and payment schedule, "the Parties shall execute mutually acceptable releases releasing the applicable Party and their successors and assigns from any further liability under the agreed upon obligation." And as discussed previously, part of the "agreed upon obligation" is that CPS is to be the "exclusive" telecommunications provider. Accordingly, the parties agreed to release future liability for claims under CPS's exclusive provision of telecommunications services to The Palms, which includes the claims under 47 C.F.R. § 76.2000 and 47 C.F.R. § 64.2500(b) at issue in this case.

Therefore, The Palms of Destin Club's claim for declaratory relief is barred by res judicata, and we need not reach the merits of The Palms of Destin Club's federal claim.

**AFFIRMED.**