[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-11314

_____

CONSUMER FINANCIAL PROTECTION BUREAU,

Plaintiff-Appellant,

versus

OCWEN FINANCIAL CORPORATION,
a Florida corporation,
OCWEN LOAN SERVICING LLC,
a Delaware limited liability company,
OCWEN MORTGAGE SERVICING INC.,
a U.S. Virgin Islands corporation,
PHH MORTGAGE CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:17-cv-80495-KAM

_____

Before NEWSOM, MARCUS, Circuit Judges, and STORY, District Judge.[*]

NEWSOM, Circuit Judge:

In 2013, the Consumer Financial Protection Bureau sued Ocwen Financial Corporation and several of its affiliates on the ground that a number of their mortgage-servicing practices violated federal law.  The CFPB's suit was resolved by a settlement agreement that was memorialized in a formal consent judgment. In short, the consent judgment released Ocwen from liability for the conduct alleged in the CFPB's complaint and established a three-year period during which Ocwen had to comply with detailed servicing standards enforced through a specific monitoring and compliance regime.  Shortly after the consent judgment's term expired in 2017, the CFPB sued Ocwen a second time, alleging that it had violated various consumer-protection laws between January 2014 and February 2017.  The district court granted summary

_____

[*] Honorable Richard W. Story, United States District Judge for the Northern District of Georgia, sitting by designation.

judgment to Ocwen on res judicata grounds, reasoning that the 2013 action barred the CFPB's follow-on suit.

On appeal, the CFPB contends that the 2013 action's res judicata effect should be controlled by that case's consent judgment—not its complaint—and that the underlying settlement agreement shows that the parties didn't intend to preclude a challenge to any conduct occurring from 2014 onwards. We agree that the 2013 action's preclusive effect should be determined by the terms of the parties' settlement agreement, as memorialized in the consent judgment. Based on our review of the entire settlement agreement, however, we hold that the parties intended to preclude new challenges to conduct covered by the settlement agreement's three-year servicing-standard, monitoring, and enforcement regime. Accordingly, we vacate the district court's decision and remand for further proceedings.

I

In December 2013, the CFPB, 49 states, and the District of Columbia filed suit in the United States District Court for the District of Columbia against Ocwen, challenging a number of its mortgage-servicing practices. That matter was resolved in February 2014 when the district court entered a consent judgment pursuant to a settlement agreement between the parties.

For present purposes, three of the consent judgment's provisions are important. First, the consent judgment remained operative for a three-year period, until February 26, 2017, and required

Ocwen to abide by specific servicing standards during that timeframe. Those provisions covered a wide range of mortgage-servicing activity, prescribing standards for, among other things, verifying borrowers' account information, documenting notes, notifying borrowers about loan-modification options, participating in bankruptcy proceedings, charging servicing fees, and obtaining force-placed insurance.

Second, the consent judgment created a monitoring and enforcement regime to police Ocwen's compliance with the servicing standards. In particular, the consent judgment appointed an individual to oversee Ocwen's implementation of the standards and to report Ocwen's progress and any potential violations to a monitoring committee, which included the CFPB. The consent judgment specified that if Ocwen violated a servicing standard by exceeding the threshold error rate for the applicable compliance metric, it would have the right to cure the violation pursuant to a corrective-action plan. If Ocwen cured, no party to the consent judgment could seek relief with respect to that violation. But if Ocwen either failed to cure or committed the same violation again within a specified time, a party could bring an enforcement action to obtain any of a limited number of remedies.

Third, the consent judgment contained a release, which, in relevant part, provided as follows:

> [T]he CFPB fully and finally releases [Ocwen] from all potential liability that has been or might have been asserted by the CFPB relating to mortgage servicing

practices described in the complaint . . . that have taken place as of 11:59 p.m., Eastern Standard Time, on December 18, 2013. . . .

[T]he CFPB specifically reserves and does not release any liability for conduct other than conduct related to the Mortgage Servicing Practices asserted or that might have been asserted in the complaint. . . .

Nothing in this Release shall limit the CFPB's authority with respect to [Ocwen], except to the extent the CFPB has herein expressly released claims.

During the consent judgment's three-year term, Ocwen abided by the servicing standards and the monitoring regime. It failed to cure a potential violation only once, and, in that instance, the monitoring committee filed an unopposed motion to obtain the consent judgment's prescribed relief.

Shortly after the consent judgment's term ended on February 26, 2017, the CFPB sued Ocwen again—this time in the United States District Court for the Southern District of Florida. The CFPB alleged, in ten counts, that Ocwen had violated various federal consumer-protection laws since January 2014. The district court granted summary judgment to Ocwen on nine counts, reasoning that the 2013 D.C. action's res judicata effect barred them to the extent that they challenged conduct occurring before February 26, 2017. After that ruling, the CFPB voluntarily dismissed the tenth count of its complaint and confirmed that the other nine challenged only Ocwen's conduct between January 2014 and February

26, 2017. The district court entered final judgment in Ocwen's favor, and the CFPB appealed.[1]

## II

Because the CFPB has narrowed the frame of its complaint, this dispute comprises three distinct time periods. The parties agree that the CFPB has released all claims against Ocwen pertaining to conduct that occurred before January 2014. Likewise, they agree that the CFPB can pursue enforcement actions for all legal violations that occurred (or may yet occur) after February 26, 2017. But the parties dispute the CFPB's authority with respect to Ocwen's conduct that occurred between January 2014 and February 26, 2017, when the consent judgment that resolved the 2013 action was in effect. Our task is to determine whether the 2013 action—and in particular the resulting forward-looking 2014 consent judgment—has any res judicata effect barring claims in the current case.

## A

A claim is barred by res judicata, *i.e.*, claim preclusion, when "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v.*

---

[1] Because "[b]arring a claim on the basis of res judicata is a determination of law," our review is de novo. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).

*Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). There is no dispute that the first three of these conditions are satisfied here: The consent judgment constituted a final judgment on the merits of the 2013 action, the D.C. district court had proper jurisdiction to enter it, and both Ocwen and the CFPB were parties to it. The debate centers on the fourth condition—whether the same causes of action are involved in both cases. In answering that question, we must also decide whether we should look to the complaint that initiated the 2013 D.C. action or the settlement agreement that resolved it.

The answer to the latter question is straightforward: In *Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, we held that when two parties settle a lawsuit, that suit's res judicata effect is "controlled by the Settlement Agreement into which the parties entered," not by "the original complaint." 371 F.3d 1285, 1288 (11th Cir. 2004). In that case, a prior action between the same parties had concluded with a settlement agreement and a dismissal with prejudice under Federal Rule of Civil Procedure 41. *Id.* at 1287. The settlement agreement specified that Norfolk Southern released Chevron from all future claims "arising out of any contamination by oil" of a leased property that was the subject of the first suit. *Id.* Norfolk Southern later sued Chevron for cleanup costs of an adjacent area harmed by non-oil contaminants. *Id.* at 1287–88. The district court granted Chevron summary judgment based on the res judicata effect of the earlier dismissal. *Id.* at 1288. Reversing, we held that although traditional principles of res judicata might

have precluded the later suit because the oil and non-oil contaminants came from the same source, the settlement agreement released claims only arising from "contamination by oil" of the leased property. *Id.* at 1290. Thus, the agreement implicitly permitted claims arising from non-oil contamination and from any contamination of areas other than the leased property. *Id.* We allowed Norfolk Southern's claim to proceed based on the parties' intent as encapsulated in the settlement agreement because a judgment based on a settlement "receives its legitimating force from the fact that the parties consented to it." *Id.* at 1288.

Following *Norfolk Southern*, we have reiterated that "[w]here a case has been settled, the principles of *res judicata* apply to the matters specified in the settlement agreement." *Original Brooklyn Water Bagel Co. v. Bersin Bagel Grp.*, 817 F.3d 719, 725 (11th Cir. 2016) (involving a consent judgment entered on a settlement agreement). That rule makes sense. When a judge enters a consent judgment based on the parties' settlement agreement, the agreement becomes the court's judgment and binds the parties like any other judgment. *See Judgment*, Black's Law Dictionary (11th ed. 2019) (defining "consent judgment" as a "settlement that becomes a court judgment when the judge sanctions it"); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4443 (3d ed. 2021) (noting that a private settlement agreement can give rise to res judicata if it is memorialized in a judgment). And because a consent judgment is legitimized by the parties' agreement, the judgment's preclusive scope extends only as far as that

21-11314                Opinion of the Court                9

agreement.  *See Norfolk S.*, 371 F.3d at 1288–89; *Goldman v. Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979) (concluding that although the parties' settlement agreement covered more ground than the original complaint, the settlement agreement controlled); *Int'l Techs. Consultants, Inc. v. Pilkington PLC*, 137 F.3d 1382, 1387 (9th Cir. 1998) ("A consent decree in a private action imposes no more on the party to be bound than that party agreed to.").

Here, the 2014 consent judgment between the CFPB and Ocwen controls the res judicata effect of the 2013 D.C. action.  To the extent that the district court held otherwise and applied traditional principles of res judicata, it erred.

**B**

Having concluded that the focus of our res judicata inquiry is the parties' settlement agreement and ensuing consent judgment, it remains for us to conduct that inquiry.  To determine the preclusive effect of a consent judgment, we must apply traditional principles of contract law to ascertain the parties' intent.  *Norfolk S.*, 371 F.3d at 1289; *see also United States v. S. Ute Tribe or Band of Indians*, 402 U.S. 159, 161 (1971) (noting that the case's decision turned on interpretation of the settlement agreement that was reduced to judgment); *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990) ("When a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties."); Wright & Miller, *supra,* at

§ 4443 (noting that a consent judgment must be enforced "in accord with the intent of the parties").

Here, there are three ways in which the parties' "intent" might be understood:  Either (1) the CFPB can sue Ocwen for all alleged legal violations occurring between January 2014 and February 26, 2017; (2) the CFPB can't sue Ocwen for any alleged violations occurring during that period; or (3) the CFPB can sue Ocwen only for legal violations not covered by the settlement's terms.  We assess each interpretation in turn.

1

The CFPB urges us to adopt the first interpretation by narrowly focusing on the settlement agreement's release provision—which, again, stated that the CFPB "does not release any liability for conduct other than conduct related to the Mortgage Servicing Practices asserted or that might have been asserted in the complaint."  The CFPB reasons that this provision explicitly encapsulates the parties' intent that their settlement agreement released Ocwen from liability only for conduct that occurred prior to the filing of the D.C. action, *i.e.*, before December 18, 2013.  Because its current lawsuit covers only conduct that occurred from January 2014 onwards, the CFPB contends that the consent judgment presents no res judicata bar.

The CFPB never really explains why we should read the settlement agreement so narrowly, other than to emphasize *Norfolk Southern*'s focus on the release provision of the settlement

agreement at issue there.  In that case, though, there weren't any injunction-like forward-facing standards or enforcement provisions like those prescribed by the agreement that we confront.  So, contrary to the CFPB's assertion, *Norfolk Southern*'s reliance on the release provision of the agreement at issue there isn't dispositive— or even very probative—here.  Moreover, and in any event, fundamental principles of contract interpretation counsel against reading one provision of a contract in isolation.  *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1221 (11th Cir. 2015) ("Terms and phrases cannot be viewed in isolation . . . ."); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent.").

Ocwen persuasively argues that the settlement agreement's extensive three-year servicing-standard, monitoring, and enforcement regime indicates that if it committed a legal violation covered by the standards, the parties intended for the CFPB to remedy that violation through the agreed-upon processes—not through a separate court proceeding.  If the CFPB could freely elect when to proceed through the strictures of the settlement agreement and when to go straight to court, Ocwen surely wouldn't have agreed to the (costly) three-year compliance-and-enforcement regime.  As a formal matter, we agree that complying with the settlement agreement's servicing standards didn't eliminate Ocwen's responsibility

to abide by the law more generally. But as a practical matter, the settlement agreement would be impossible to enforce if the CFPB could unilaterally decide when to invoke it and when to ignore it. Ocwen couldn't possibly have intended to get so little security from the parties' bargain.

**2**

For its part, Ocwen seems (perhaps not surprisingly) to urge a diametrically opposite interpretation of the parties' agreement. On its reading, the parties agreed to an *exclusive* enforcement regime during the agreement's three-year term, meaning that the CFPB can't now initiate a new lawsuit for *any* legal violation that Ocwen committed in that period. *See* Br. of Appellee at 23–24 (describing the settlement agreement as an "exclusive enforcement regime" and stating that the parties agreed to a "comprehensive framework [that] would govern any challenge to Ocwen's activities"); Oral Arg. at 23:21 (advocating that the CFPB can't sue to remedy legal violations during the three-year period even if no servicing standard is on point).

We see two problems with Ocwen's interpretation. First, the settlement agreement contains no provision stating that the agreement's enforcement mechanisms are exclusive or that the CFPB can't sue Ocwen *at all* during the consent judgment's life. Second, the settlement's release provision states, in part, that nothing in the release "shall limit the CFPB's authority with respect to [Ocwen], except to the extent the CFPB has herein expressly released claims." Reading the agreement to preclude the CFPB from

suing Ocwen for any alleged misconduct during the consent judgment's term would require us to conclude that the CFPB silently relinquished its authority to enforce the law. It can't be that the CFPB agreed to let Ocwen violate the law so long as it didn't violate a servicing standard. We must therefore also reject Ocwen's construction of the parties' agreement.

**3**

We think that the best interpretation of the agreement is this: On the one hand, for conduct that occurred between January 2014 and February 26, 2017 and is covered by the consent judgment's servicing-standards-and-monitoring regime, the parties established a particular enforcement mechanism that the CFPB must follow. On the other hand, the CFPB may sue Ocwen to enforce legal violations that occurred during that period and are *not* covered by that regime. This middle-course reading avoids the problem of rendering the settlement agreement's enforcement mechanism meaningless, while preserving the CFPB's authority to enforce the law.

In its brief to us, Ocwen carefully explained its appraisal of the overlap between the servicing standards and each of the counts in the CFPB's current complaint. *See* Br. of Appellee at 13–14. But the district court never undertook such a claim-by-claim analysis when it dismissed all nine of the CFPB's counts, and the CFPB contends that at least one claim—about escrow accounts—isn't covered by an on-point servicing standard. *See* Br. of Appellant at 22–24. Because "[w]e are . . . a court of review, not a court of first

view," *Callahan v. U.S. Dep't of Health & Hum. Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019), we decline to conduct a claim-by-claim assessment ourselves; rather, we remand to the district court to do so in the first instance.

⋆  ⋆  ⋆

For these reasons, we hold (1) that the res judicata effects of an earlier lawsuit resolved by a consent judgment are measured by reference to the terms of the consent judgment, rather than the complaint, and (2) that in this case, the CFPB may, consistent with the consent judgment that resolved the 2013 D.C. action, sue Ocwen for alleged violations that occurred between January 2014 and February 26, 2017 *only* if they aren't covered by the consent judgment's servicing-standard, monitoring, and enforcement regime.

Accordingly, we **VACATE** the district court's decision and **REMAND** so that, in accordance with *Norfolk Southern*, the court can determine in the first instance which counts of the CFPB's current complaint are barred by the 2014 consent judgment between the parties.